**Susan KANTER; Sharon Plunk,**
**Plaintiffs–Appellees,**

v.

**WARNER–LAMBERT CO., Defendant,**

**and**

**Pfizer Inc., Defendant–Appellant.**

**No. 99–16604.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 14, 2000

Filed Sept. 10, 2001

Joseph W. Bell, Zelle, Hofmann, Voelbel, Mason & Gette, LLP, San Francisco, California, for the plaintiffs-appellees.

Thomas A. Smart, Kaye, Scholer, Fierman, Hays & Handler, LLP, New York, New York, for the defendant-appellant.

Before: SCHROEDER, Chief Judge, HALL, and W. FLETCHER, Circuit Judges.

WILLIAM A. FLETCHER, Circuit Judge:

Defendant Pfizer Inc. ("Pfizer") appeals a district court order awarding attorneys' fees to plaintiffs Susan Kanter and Sharon Plunk ("Plaintiffs") under 28 U.S.C. § 1447(c). The district court awarded those fees after Pfizer and its three co-defendants removed Plaintiffs' state-law class action from California court and the district court remanded. Because we agree with the district court that removal was improper, we affirm its award of attorneys' fees.

I

Pfizer, Warner–Lambert Company ("Warner–Lambert"), Care Technologies, Inc. ("Care Technologies") and Hogil Pharmaceutical Corporation ("Hogil") (collectively, "Defendants") distribute and sell products for the treatment of head lice under the trademarks RID, NIX, CLEAR, and A–200. Plaintiffs filed a complaint in California Superior Court alleging that head lice have become so resistant to the active ingredients in Defendants' products that the products "simply do not work" any more. Plaintiffs sought to represent a class composed of "all persons or entities in California who purchased NIX, RID, CLEAR, and/or A–200 within four years preceding the filing of this complaint ... and who experienced a failure of said product(s)...." On behalf of this class, they asserted state law causes of action for violation of California's Magnuson–Moss Consumer Protection Act; breach of express warranty; fraud; false advertising; unfair competition; and violation of California's Consumer Legal Remedies Act. They sought damages consisting of all amounts paid by the class for purchases of Defendants' anti-lice products, plus pre-

judgment interest. They also sought an order

enjoining defendants from continuing to sell RID, NIX, CLEAR and A–200 in their current ineffective formulations [or alternatively] an order enjoining defendants from continuing to advertise RID, NIX, CLEAR and A–200 to the public and via labeling on the packages as an effective treatment for head lice infestations without warning customers that head lice have become resistant to the active ingredients in the products....

Plaintiffs also requested attorneys' fees.

Pfizer removed to federal district court based on diversity jurisdiction. Pfizer claimed that complete diversity existed because Plaintiffs alleged they were residents of California, while none of the four Defendants was a citizen of California. Pfizer also asserted that Plaintiffs' claims satisfied the amount-in-controversy requirement of 28 U.S.C. § 1332 for several reasons. First, it contended that Plaintiffs' demand for punitive damages should be aggregated, rather than divided among class members, for purposes of determining the amount in controversy. Second, it contended that Plaintiffs' attorneys' fees should be attributed solely to the named plaintiffs for purposes of amount of controversy, and that the district court should exercise supplemental jurisdiction over the claims of unnamed class members. *See* 28 U.S.C. § 1367. Third, it contended that the cost to the Defendants of the injunctive relief sought by Plaintiffs exceeded $75,000. Pfizer's three co-defendants joined the notice of removal.

On motion by Plaintiffs, the district court remanded to state court. It found that while Pfizer's notice of removal alleged facts sufficient to establish diversity of citizenship between Plaintiffs and Pfizer, it had not established diversity between Plaintiffs and the remaining Defendants.

However, because the district court recognized that Defendants could cure this pleading defect, it went on to find that Pfizer and the other Defendants had not satisfied the amount-in-controversy requirement. First, it agreed with the numerous district courts that had rejected Defendants' argument based on aggregation of punitive damages. Second, it held that Defendants had produced no evidence that attorneys' fees would actually exceed $150,000 ($75,000 for each named plaintiff). It held, further, that even if attorneys' fees did exceed that amount, supplemental jurisdiction was unavailable under *Zahn v. International Paper Co.*, 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973). Third, the district court held that Defendants' arguments regarding the valuation of injunctive relief were foreclosed by our decision in *Snow v. Ford Motor Co.*, 561 F.2d 787 (9th Cir.1977).

The district court awarded Plaintiffs the attorneys' fees they incurred in connection with removal and remand. It observed that the Ninth Circuit had not considered many of the arguments raised by Defendants because of the prohibition on review of remand orders, *see* 28 U.S.C. § 1447(d), but that numerous district courts had rejected them in published opinions. It wrote:

In the absence of a Ninth Circuit opinion, defendants have felt free to persist in removing these cases, each time raising arguments that have been consistently rejected by the district courts. Such tactics waste the time and resources of both plaintiffs and the courts in this circuit.

The district court awarded attorneys' fees against all four defendants, but only Pfizer appeals.

II

This panel has considered most of Pfizer's legal arguments in our opinion in

*Gibson v. Chrysler Corp.*, 261 F.3d 927 (9th Cir.2001), argued and submitted on the same day as this case. For the reasons articulated in *Gibson*, we have jurisdiction to examine the legal conclusions reached by the district court's remand order insofar as necessary to review the fee award. *See id.* at ——. Because of the prohibition on appellate review of remand orders, we cannot reverse or affirm the order itself. The district court remanded based on two independent grounds. Although we conclude that either was sufficient, we consider both.

### A. *Complete Diversity of Citizenship*

The district court held that Defendants failed to meet their burden to establish diversity jurisdiction because their notice of removal did not allege facts sufficient to establish complete diversity of citizenship. The notice of removal stated that Plaintiffs were California residents, that Pfizer was a corporate citizen of Delaware and New York, and that "[n]one of the other defendants is a citizen of the State of California." Like Plaintiffs' complaint, the notice of removal did not affirmatively allege the state of citizenship of corporate defendants Warner–Lambert, Care Technologies, or Hogil; it merely alleged that they were not citizens of California.

■ The district court held that Pfizer's failure to specify the corporate citizenship of its three co-defendants meant that Defendants had "failed to meet their burden of proving that the parties are of [completely] diverse citizenship." Although, at this stage of the case, the defendants were merely required to allege (not to prove) diversity, the district court was concerned about a legitimate issue. Absent unusual circumstances, a party seeking to invoke diversity jurisdiction should be able to allege affirmatively the actual citizenship of the relevant parties. *See Whitmire v. Vic-*

*tus Ltd. t/a Master Design Furniture*, 212 F.3d 885, 887 (5th Cir.2000) ("[I]n a diversity action, the plaintiff must state all parties' citizenships such that the existence of complete diversity can be confirmed.") (quoting *Chemical Leaman Tank Lines, Inc. v. Aetna Cas. & Sur. Co.*, 177 F.3d 210, 222 n. 13 (3d Cir.1999)); *see also* 5 C.A. Wright & A. Miller, *Federal Practice and Procedure* § 1208 at 101 (2d ed.1990). There is, however, a more serious pleading defect.

■ Plaintiffs' complaint and Pfizer's notice of removal both state that Plaintiffs were "residents" of California. But the diversity jurisdiction statute, 28 U.S.C. § 1332, speaks of citizenship, not of residency. To be a citizen of a state, a natural person must first be a citizen of the United States. *Newman–Green, Inc. v. Alfonzo–Larrain*, 490 U.S. 826, 828, 109 S.Ct. 2218, 104 L.Ed.2d 893 (1989). The natural person's state citizenship is then determined by her state of domicile, not her state of residence. A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return. *See Lew v. Moss*, 797 F.2d 747, 749 (9th Cir.1986). A person residing in a given state is not necessarily domiciled there, and thus is not necessarily a citizen of that state. *See, e.g., Weible v. United States*, 244 F.2d 158, 163 (9th Cir.1957) ("Residence is physical, whereas domicile is generally a compound of physical presence plus an intention to make a certain definite place one's permanent abode, though, to be sure, domicile often hangs on the slender thread of intent alone, as for instance where one is a wanderer over the earth. Residence is not an immutable condition of domicile."). In this case, neither Plaintiffs' complaint nor Pfizer's notice of removal made any allegation regarding Plaintiffs' state citizenship. Since the party asserting diversity jurisdiction bears the

burden of proof, *see Lew,* 797 F.2d at 749, Pfizer's failure to specify Plaintiffs' state citizenship was fatal to Defendants' assertion of diversity jurisdiction.

The district court noted, however, and we agree, that Pfizer could potentially have cured its defective allegations regarding citizenship by amending its notice of removal. *See* 28 U.S.C. § 1653 ("Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts."); *Jacobs v. Patent Enforcement Fund, Inc.,* 230 F.3d 565, 568 n. 3 (2d Cir.2000) ("[A]n inadequate pleading does not in itself constitute an actual defect of federal jurisdiction."); *see also* 15 James Wm. Moore et al., *Moore's Federal Practice* § 102.17[1], at 102–31 (3d ed. 2001) ("Moore's"). Indeed, Plaintiffs have never disputed diversity of citizenship. The district court therefore examined Pfizer's arguments as to why the amount-in-controversy requirement of 28 U.S.C. § 1332 was satisfied. We follow suit.

### B. *Amount in Controversy*

■■■ Our opinion in *Gibson* considers most of Pfizer's amount-in-controversy arguments in detail. *See Gibson,* 261 F.3d at ——. For the reasons given in that opinion, we hold that if a named plaintiff in a diversity class action has a claim with an amount in controversy in excess of $75,000, 28 U.S.C. § 1367 confers supplemental jurisdiction over claims of unnamed class members irrespective of the amount in controversy in those claims, and that under California law punitive damages cannot be aggregated and counted as a single amount for purposes of amount in controversy. As we did in *Gibson,* we hold here that any potential attorneys' fees award in this class action cannot be attributed solely to the named plaintiffs for purposes of amount in controversy. The named plaintiffs in *Gibson* sought attorneys' fees under Cal.Civ.Proc.Code § 1021.5, which awards attorneys' fees "to a successful party." *See Gibson,* 261 F.3d at 942. The named plaintiffs in this case request attorneys' fees under California's Consumer Legal Remedies Act, Cal. Civ.Code § 1780, which awards attorneys' fees "to a prevailing plaintiff." The language in the two provisions is not materially different, and we hold that attorneys' fees awarded under § 1780 must be divided among all members of the plaintiff class for purposes of amount in controversy. *See Cohen v. Office Depot, Inc.,* 204 F.3d 1069, 1080 & 1080 n. 11 (11th Cir.2000) (same result for Florida statute awarding fees to "prevailing party").

■■■ However, Pfizer raises one argument not considered in *Gibson.* It contends that the value of injunctive relief sought by Plaintiffs should be determined by calculating the cost to Defendants of providing the relief requested by the class and then treating that entire cost as the amount in controversy. Put another way, Pfizer wants us to assume for purposes of amount in controversy that a single plaintiff seeks the injunctive relief requested by Plaintiffs, and to allocate the cost to Defendants of providing the requested injunctive relief to that one plaintiff. Pfizer contends that if we were to view Plaintiffs' case in this way, the amount in controversy would exceed $75,000. The district court believed that Pfizer's argument is foreclosed by *Snow v. Ford Motor Co.,* 561 F.2d at 787. We agree.

The named plaintiff in *Snow* brought a class action in state court, alleging that defendant Ford Motor Company ("Ford") had sold "trailering packages" for its vehicles that did not include a necessary wiring harness, despite specific advertising statements to the contrary. The named plaintiff sought, on behalf of a class, actual

damages of $11.00 per class member, punitive damages, and an order "enjoin[ing] Ford from continuing to sell the trailering special packages without a wiring connector kit." *Id.* at 788. Ford removed to federal district court based on diversity. It argued that the plaintiff's complaint satisfied the amount-in-controversy requirement because the cost to Ford of complying with the injunction would exceed $10,000 (the jurisdictional amount at that time).

Snow recognized that in some non-class actions we had calculated the value of injunctive relief for purposes of amount in controversy by examining the cost of the injunction to the defendant. *See id.* at 788–89 (citing *Ridder Bros., Inc. v. Blethen,* 142 F.2d 395, 398–99 (9th Cir.1944)). We observed, however, that this defendant's-viewpoint approach could not be applied to class actions without undermining *Snyder v. Harris,* 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969), in which the Supreme Court had held that class action plaintiffs cannot aggregate the amounts of their "separate and distinct" claims in order to meet the amount-in-controversy requirement. We explained that in class actions, use of the defendant's-viewpoint approach was "basically the same as aggregation." *Snow,* 561 F.2d at 790. Therefore, in class actions asserting the "separate and distinct" claims of class members, as opposed to claims that are the "common and undivided" right of the class, the defendant's-viewpoint approach was inappropriate. Although the injunction sought in *Snow* would have affected thousands of future sales and would have cost Ford more than $10,000, we held that where

the equitable relief sought is but a means through which the individual claims may be satisfied, the ban on aggregation applies with equal force to the equitable as well as the monetary relief. . . . Given *Snyder,* the proper focus . . . is not influenced by the type of relief requested, but rather continues to depend upon the nature and value of the right asserted. The right asserted by plaintiffs is the right of individual future consumers to be protected from Ford's allegedly deceptive advertising which is said to injure them in the amount of $11.00 each. That figure is far below the jurisdictional minimum.

*Id.* at 790–91 (citations omitted, footnote omitted).

Like the *Snow* plaintiffs, Plaintiffs in this case seek an injunction preventing Defendants from advertising and selling a defective product to them. In *Snow,* the product allegedly was incomplete; in this case, the product allegedly does not work. In *Snow,* the value to each plaintiff of the right not to be deceived by Ford's advertising was the cost of the wiring harness Ford failed to provide-a little over $10; in this case, the value of that right is the cost of the allegedly ineffective medication-between $9 and $17. We recognize that the cases are not precisely analogous. In *Snow,* Ford could have complied with the requested injunction on a plaintiff-by-plaintiff basis, whereas in this case it would be more difficult for Pfizer to do so. That is, Ford could have handed out wiring harnesses to each future individual purchaser of a trailering kit, while Pfizer cannot easily stop selling or advertising its lice medication one consumer at a time. We regard this distinction as irrelevant to the logic of *Snow,* however, because in both cases the right asserted is a "separate and distinct" right of individual class members, not a "common and undivided"

right of the class as a whole. *See Gibson,* 261 F.3d at ——.

Just as in *Snow,* the "nature of the right asserted" by Plaintiffs in this case "is the right of individual future consumers to be protected from ... allegedly deceptive advertising." *Snow* at 791. Each plaintiff can sue to vindicate that right as an individual; he need not join the members of the class in order to bring a cognizable claim. *Compare Eagle v. American Tel. & Tel. Co.,* 769 F.2d 541, 547 (9th Cir.1985) (allowing aggregation in shareholder derivative suit). Under *Snyder,* Pfizer cannot calculate the amount in controversy by aggregating the value of these "separate and distinct" individual claims. And under *Snow,* Pfizer cannot evade *Snyder* by recharacterizing what is, in effect, a request for aggregation as an argument for a defendant's-viewpoint approach to calculating the cost of an injunction.

Pfizer attempts to distinguish *Snow* by relying on the Seventh Circuit's opinion in *In re Brand Name Prescription Drugs Antitrust Litigation,* 123 F.3d 599 (7th Cir.1997) ("*Brand Name*"), a class action in which drug consumers sought to enjoin allegedly collusive sales practices by pharmaceutical companies. We do not find Pfizer's reliance on *Brand Name* persuasive. *Brand Name* did propose valuing injunctive relief by examining "the cost to each defendant of an injunction running in favor of one plaintiff," but it did so in dictum and without the issue having been argued to the court. *Id.* at 609. More important, *Brand Name* still applied the core inquiry of *Snyder,* asking "whether each plaintiff is asserting an individual right or, rather, a right to an undivided interest in something," and noted that because each individual plaintiff had "a right to be free from the indirect effects of collusive pricing," the case involved individual rights rather than an undivided right. *Id.* at 610.

Even if *Snow* were not controlling authority, we would be reluctant to allow a request for injunctive relief to provide the basis for federal jurisdiction in a case, such as this one, where that relief does not appear to be the primary object of the litigation. In this case Plaintiffs seek monetary compensation for consumers who relied on Defendants' misleading advertising. We recognize that Plaintiffs also ask the court to enjoin Pfizer and its co-defendants from selling their anti-lice products in ineffective formulations, or from advertising their products as effective. But if Plaintiffs succeed in obtaining a significant award of monetary damages, they will likely accomplish what we believe to be their essential goal in this litigation without the added spur of an injunction. *See Packard v. Provident Nat. Bank,* 994 F.2d 1039, 1050 (3d Cir.1993).

■ We therefore distinguish this case from those in which it is apparent that injunctive relief is the primary relief sought. Such actions are properly brought under Rule 23(b)(2), which allows class actions where

> the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole....

In Rule 23(b)(2) cases, monetary damage requests are generally allowable only if they are merely incidental to the litigation. *See Probe v. State Teachers' Retirement System,* 780 F.2d 776, 780 (9th Cir.1986); 5 Moore's § 23.43[3][a] at 23–196. If *Snow* and the class action in this case had not

been remanded to state court, they very likely would have proceeded in federal court under Rule 23(b)(3), the so-called "damages class action" provision, which allows a plaintiff to bring a class action if a court

> finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. . . .

■ Accepting Pfizer's argument would thus mean that virtually every mass-tort class action involving an incidental request for injunctive relief would satisfy the amount-in-controversy requirement of 28 U.S.C. § 1332. *See, e.g., Smiley v. Citibank,* 863 F.Supp. 1156, 1164 (C.D.Cal. 1993). This would directly contradict the goals of the amount-in-controversy requirement, which serves both to preserve the jurisdiction exercised by the state courts and to limit the size of the diversity caseload in federal courts. *See Snyder,* 394 U.S. at 340, 89 S.Ct. 1053. We therefore believe that it would be inappropriate to determine the amount in controversy in this case by examining the potential cost to Pfizer of complying with the injunction Plaintiffs request. *See Mitchell v. GEICO,* 115 F.Supp.2d 1322, 1327 (M.D.Al.2000) (refusing to value injunctive relief from defendant's viewpoint where plaintiffs were "primarily concerned with retrospective monetary relief for each class member, not prospective injunctive relief for the class as a whole").

### III

■ We conclude that the district court properly remanded to state court

based both on a lack of complete diversity and a failure to establish a sufficient amount in controversy. We therefore turn to the propriety of the award of attorneys' fees associated with the removal and remand. *See* 28 U.S.C. § 1447(c) ("An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."). We review such fee awards for abuse of discretion. *K.V. Mart Co. v. United Food and Comm'l Workers Int'l Union,* 173 F.3d 1221, 1223 (9th Cir. 1999). Under that standard, we affirm the award of attorneys' fees. *See Gibson,* 261 F.3d at ——; *Balcorta v. Twentieth Century–Fox Film Corp.,* 208 F.3d 1102, 1112 (9th Cir.2000).

AFFIRMED.