### In re PAXIL LITIGATION.

### No. CV 01–07937 MRP.

United States District Court, C.D. California.

Aug. 29, 2003.

See also, 212 F.R.D. 539.

Kevin J. Yourman, Zev B. Zysman, Weiss & Yourman, Karen Ann Barth, Baum, Hedlund, Aristei, Guilford & Schiavo, Los Angeles, CA, Mary V. Schiavo, Columbus, OH, Donald J. Farber, Donald J. Farber Law Offices, San Rafael, CA, for Plaintiffs.

Todd Davis, Andrew T. Bayman, Chilton D. Varner, Scott B. Pfahl, S. Samuel Griffin, King & Spalding, Atlanta, GA, Mark S. Brown, King & Spalding, Washington, DC, David J. Fleming, Drinker, Biddle & Reath, Los Angeles, CA, Charles F. Preuss, Thomas W. Pulliam, Jr., Vernon I. Zvoleff, Drinker, Biddle & Reath, San Francisco, CA, Tamar P. Halpern, Phillips, Lytle, Hitchcock, Blaine & Huber, Buffalo, NY, for Defendant.

## MEMORANDUM OF DECISION AND ORDER RE:

### Motion for Class Certification Motion to Dismiss Non–California Plaintiffs

PFAELZER, District Judge.

### I. Introduction

Defendant SmithKline Beecham Corporation, d/b/a GlaxoSmithKline Inc. ("GSK") manufactures and sells Paxil, a prescription drug indicated for, among other things, depression, panic disorder, obsessive compulsive disorder, and social anxiety. Plaintiffs, who are current and past users of Paxil, allege that whatever beneficial effects Paxil may bestow upon patients, those effects are far outweighed by the alarming effects that some patients endure when they attempt to discontinue Paxil. These effects are alleged to include shock sensations, hot and cold flashes, intermittent stabbing pain in the head, and uncontrollable shaking. Plaintiffs claim that though GSK knew about these discontinuation symptoms, its advertising campaigns as well as its sales force deliberately downplayed these concerns, to the detriment of the consuming public.

Two motions are before the Court. The first is an unopposed Motion to Dismiss Non–California Plaintiffs. The second is a motion to certify two classes.[1] The Equitable Relief Class would consist of California residents who were prescribed and consumed Paxil after December 29, 1992. It would seek injunctive relief in the form of prohibitions on certain GSK statements as well as restitution of amounts paid for the cost of Paxil by patients. The Causation Issues Class would comprise 215 California residents who experienced one or more enumerated symptoms and would litigate "general causation," or the capacity of Paxil to cause the complained-of symptoms.

### II. Legal Standard

The Court assumes familiarity with Rule 23 class certifications, and a brief review of the relevant standards will suffice. Rule 23 has two prongs. Rule 23(a) lists four prerequisites to a class action: 1) the class must be so numerous that joinder is impracticable; 2) there are common questions of law or fact; 3) the claims and defenses of the class representative are typical of those of the class; and 4) the class representative will fairly and adequately represent the interests of the class. *See* Fed.R.Civ.P. 23(a)(1)-(4). Rule 23(b) then describes the three main types of classes that are certifiable and imposes requirements that must be met prior to certification of each type of class. Here, Plaintiffs rely on Rule 23(b)(2), which authorizes certification where injunctive or declaratory relief is appropriate for the class as a whole and on Rule 23(b)(3), which authorizes certification

---

1. This is Plaintiffs' second class certification attempt. *See In re Paxil Litig.*, 212 F.R.D. 539 (C.D.Cal.2003) ("*In re Paxil*").

where common questions of law or fact predominate and where the class action mechanism is superior to other available methods for the fair and efficient adjudication of the controversy. Even where a case as a whole may be unsuitable for class action treatment, Rule 23 provides the Court some flexibility in separating the distinct issues and classes within the case in order to fashion a case suitable for class action treatment:

> When appropriate (A) an action may be brought or maintained as a class action with respect to particular issues, or (B) a class may be divided into subclasses and each subclass treated as a class, and the provisions of this rule shall then be construed and applied accordingly.

Fed.R.Civ.P. 23(c)(4).

The party seeking class certification bears the burden of demonstrating it has met all four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b). *See Valentino v. Carter–Wallace,* 97 F.3d 1227, 1234 (9th Cir.1996). The Court is a fiduciary for the absent class members and must conduct an independent and "rigorous analysis" of the moving party's claims to examine whether the requirements are met. *See General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982).

### III. Equitable Relief Class

Plaintiffs, alleging that certain GSK marketing statements constitute "unlawful, unfair or fraudulent" business acts proscribed by California's unfair competition law ("UCL"), Cal. Bus. & Prof.Code § 17200, seek to certify the Equitable Relief Class

pursuant to Rule 23(b)(2). Plaintiffs contend that they can demonstrate such violations without any "inquiry into the class members' individual circumstances"; expert testimony is all that would be required. (Mot. at 12.) The putative class seeks injunctive relief in the form of a prohibition against GSK's making of future misleading statements. As well, it seeks restitution[2] of all monies acquired from the sales of Paxil.[3]

### A. Rule 23(a)

There is no serious dispute that the proposed Equitable Relief Class meets Rule 23(a)'s numerosity and commonality requirements. Whether it meets the typicality and adequacy requirements as well merits more consideration. The putative Plaintiffs have all consumed Paxil, but the similarities end there. Not all of them have suffered adverse consequences and the ones that have suffered such consequences may have done so because of reasons unrelated to their ingestion of Paxil.[4] Moreover, some Plaintiffs may never have seen or heard the statements sought to be enjoined or may have received medical advice from their physicians that would have counteracted GSK's allegedly deceptive statements. These differences would generally make a group unsuitable for class treatment for a number of reasons, not the least of which is the potential for conflicts of interest among the class members.

Plaintiffs argue, however, that California's Section 17200 unifies the otherwise disparate Plaintiffs by broadly defining the cause of action and by allowing individuals to sue as "private attorney generals." Under Section 17200, Plaintiffs need not have been injured

**2.** Damages are not available under Section 17200. *See MAI Systems Corp. v. UIPS,* 856 F.Supp. 538 (N.D.Cal.1994).

**3.** Plaintiffs fail to communicate with candor and clarity whether the equitable remedy they seek is disgorgement or restitution. Restitution involves returning property to the person who had an ownership interest in the property while disgorgement is primarily concerned with depriving a wrongdoer of wrongfully obtained property. With disgorgement, return of property to the rightful owner may, but need not, be involved. Additionally, profits that were not even obtained from a victim can be the subject of disgorgement, but not of restitution. *See Kraus v. Trinity Mgmt.*

*Services, Inc.,* 23 Cal.4th 116, 126–27, 96 Cal. Rptr.2d 485, 999 P.2d 718 (2000). Perhaps most importantly for the present purposes, although restitution is a remedy available under Section 17200, disgorgement is not. Thus, the latter remedy requires class certification. *See id.* at 137, 96 Cal.Rptr.2d 485, 999 P.2d 718. These *distinctions* would clearly affect the appropriateness of certification under Rule 23(b)(2). For the present purposes, the Court assumes that Plaintiffs seek only restitution.

**4.** These issues would not be litigated at all by the Equitable Relief Class.

by, *see Educational Testing Serv. v. Simon,* 95 F.Supp.2d 1081, 1090–91 (C.D.Cal.1999), much less have relied upon, Defendant's misrepresentations, *see Podolsky v. First Healthcare Corp.,* 50 Cal.App.4th 632, 647–48, 58 Cal.Rptr.2d 89 (1996). In fact, they might have even benefitted tremendously from the use of Paxil. Moreover, Plaintiffs here make little mention of the fact that Paxil is a prescription drug and available only after consultation with a doctor. It appears that they have skirted this fact and instead contend that the learned intermediary doctrine, which states that in the case of prescription drugs, the duty to warn "runs to the physician, not to the patient," *see Carlin v. Superior Court,* 13 Cal.4th 1104, 1116, 56 Cal.Rptr.2d 162, 920 P.2d 1347 (1996) (citations omitted), becomes irrelevant under Section 17200. Plaintiffs allege that the California statute, by focusing on whether the Defendant has made misleading statements, dispenses with the need to determine whether those statements ultimately made it to the end-consumer in an unaltered form. Under Plaintiffs' reading, then, Section 17200 allows one who has never been exposed to the allegedly deceptive statements, and who might have received accurate instructions from his physician, and even benefitted from Paxil, to not only be a part of a class, but to actually represent the class. Moreover, Plaintiffs seem to suggest that any action under Section 17200 would automatically meet the typicality and adequacy requirements of Rule 23(a).

While the Court will assume for the purposes of the class certification that Section 17200 has the broad scope that Plaintiffs ascribe to it, the Court cannot assume that Plaintiffs' Section 17200 claims automatically meet Rule 23(a)'s requirements of typicality and adequacy.

■ With respect to the typicality requirement, Rule 23(a)(3)'s plain text requires only that the representative parties' claims and defenses are typical of those in the class. *See* Fed.R.Civ.P. 23(a)(3). The physical, emotional, or monetary damages sustained by Plaintiffs need not be identical or even similar, so long as those differences do not negatively affect the viability of the legal theories under which they proceed.

To be sure, the cases in this area of the law contain numerous statements to the effect that the class representative must "possess the same interest and suffer the same injury." *See, e.g., General Telephone,* 457 U.S. at 156, 102 S.Ct. 2364 (quoting *East Texas Motor Freight System v. Rodriguez,* 431 U.S. 395, 403, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977)). However, the contexts in which these statements were made suggest that the courts required "same injury" not for its own sake, but because the particular injury was critical to the ability to recover under the applicable cause of action. Thus, where the suit alleges employment discrimination prohibited by Title VII, individuals who were not discriminated against would be incapable of being class representatives—not merely because they did not suffer the same injury, but because the lack of injury affected the legal theories they could pursue and the defenses to which they were subject. *See Texas Motor Freight,* 431 U.S. at 403–04, 97 S.Ct. 1891.[5] Taking all that the Plaintiffs say about the latitude of Section 17200 as applied to this case, the element of same injury and same interest are problematic.

■ As to meeting the adequacy of representation requirement, the lack of cohesion is also a formidable obstacle. Adequacy of representation involves two separate questions: 1) do the representative Plaintiffs and their counsel have any conflicts of interest with other class members, and 2) will the representative Plaintiffs and their counsel vigorously prosecute the action? *See Staton v. Boeing Co.,* 327 F.3d 938, 957 (9th Cir. 2003). Here, the lack of cohesion that Section 17200 arguably allows raises the concern that a person who has not been affected in any way by the allegedly deceptive statements is given the responsibility of vigorously prosecuting an action seeking to enjoin

5. At least in dicta, other courts have disagreed with this view. *See In re First Alliance Mortg.* *Co.,* 269 B.R. 428, 439 (C.D.Cal.2001).

those statements.[6] The prospect is thereby raised that if this litigation were protracted, or if the possibility of restitution were eliminated, *see infra*, the vigor with which the class representatives might pursue this action may suffer.

It may well be that the class representatives have an established interest that ensures that they will adequately represent the class; however, in focusing solely on the fact that Section 17200 relaxes the level of cohesiveness required for purposes of prevailing at trial (Reply at 14), Plaintiffs have failed to meet their burden of providing facts which show that the requirements of Rule 23(a)(4) are met. *See Doninger v. Pacific Northwest Bell, Inc.*, 564 F.2d 1304, 1309 (9th Cir.1977). Rule 23(a) is meant to ensure not only that certified actions enhance economy, but that they do not do so at the cost of due process for the absent members. Plaintiffs' reliance on Section 17200 emphasizes the former, but neglects the latter.

## B. Rule 23(b)(2)

■ The proposed class is also inappropriate for certification under Rule 23(b)(2) because it is aimed primarily at obtaining monetary relief. Rule 23(b)(2) classes are not prohibited from seeking monetary relief, but certification of such classes is inappropriate where the monetary relief sought predominates over the injunctive relief being sought. *Advisory Comm. Notes to Rule 23* (1966); *Doninger*, 564 F.2d at 1314. Stated another way, the monetary damages must be secondary to the primary claim for injunctive or declaratory relief. *Probe v. State Teachers' Ret. Sys.*, 780 F.2d 776, 780 (9th Cir. 1986). In determining whether claims for monetary damages predominate, the Court examines the specific facts and circumstances of the case and determines the intent of Plaintiffs in bringing the suit. *See Molski v. Gleich*, 318 F.3d 937, 950 (9th Cir.2003). As part of this inquiry, the Court may ask whether a reasonable party would bring the

suit to obtain the injunctive relief and whether the injunctive relief sought would be both reasonably necessary and appropriate were the party to succeed on the merits. *See id.* (quoting *Robinson v. Metro–North Commuter Railroad Co.*, 267 F.3d 147, 164 (2d Cir. 2001)).

■ The threshold question then is whether a claim for restitution must be incidental to a claim for injunctive or declaratory relief. Plaintiffs argue that *Molski* and similar cases are about monetary damages, and not equitable remedies such as restitution. They thus imply that the claim for restitution need not be secondary to the claim for injunctive relief. (Reply at 10.) The distinction made in Rule 23(b)(2), however, is not one between equitable remedies and compensatory damages; rather, it is between "final injunctive relief or corresponding declaratory relief with respect to the class as a whole" and all other forms of relief. Fed.R.Civ.P. 23(b)(2). Therefore, Plaintiffs' claim for restitution must be merely incidental to the claim for injunctive or declaratory relief. *See Kanter v. Warner–Lambert Co.*, 265 F.3d 853, 860 (9th Cir.2001) (in dicta, stating that a primary claim for restitution would have made Rule 23(b)(2) certification inappropriate); *In re School Asbestos Litig.*, 789 F.2d 996, 1008 (3d Cir.1986) (upholding district court finding that claim for remedial action and restitution was one for money damages not maintainable as a Rule 23(b)(2) class action).

■ The Court, having examined the proposed class and the relief sought, concludes that Plaintiffs' claim for restitution predominates. To begin with, many of the allegedly offending statements sought to be enjoined are no longer being made by GSK. (Opp'n. at 6–7.) Although voluntary cessation of prohibited conduct does not render an issue moot, *see United States v. W.T. Grant Co.*, 345 U.S. 629, 632, 73 S.Ct. 894, 97 L.Ed.2d 1303 (1953), the fact that some (perhaps most) of the allegedly offending conduct has

---

**6.** Plaintiffs' Reply raises the prospect that even if the proposed class representatives did not hear any of the allegedly deceptive statements, they were harmed by GSK's "failure to adequately warn." (Reply at 15.) However, the suggestion that the Equitable Relief Class would seek a

mandatory injunction is neither raised in Plaintiffs' moving papers (Mot. at 1) nor in the Proposed Order submitted therewith. The Court therefore does not consider the prospect that the class would seek a mandatory injunction.

ceased nevertheless speaks to the "essential goal" of this litigation. *Kanter*, 265 F.3d at 860. Further, it is not entirely clear what continuing offending conduct Plaintiffs seek to enjoin. Plaintiffs correctly point out that neither Section 17200 nor Rule 23 requires them to point out with specificity the offending conduct, and that they are entitled to pursue "wrongful business conduct in whatever context such activity might occur." (Reply at 4) (quoting *Mass. Mutual Life Ins. Co. v. Superior Ct.*, 97 Cal.App.4th 1282, 1288, 119 Cal.Rptr.2d 190 (2002).) However, the vague description of the nature of the actions sought to be enjoined suggests that the value of the injunctive relief requested is dwarfed by the value of the monetary damages requested. *See Linney v. Cellular Alaska Pshp.*, 151 F.3d 1234, 1240 (9th Cir. 1998). This suggestion finds additional support in the fact that Section 17200 does not require "individualized proof of deception, reliance and injury," *Mass. Mutual*, 97 Cal. App.4th at 1288, 119 Cal.Rptr.2d 190, thereby presenting the possibility that a large number of "victims" will have never been subjected to the allegedly offending statements sought to be enjoined, but would nevertheless be benefitted by the monetary amounts sought to be restituted.[7]

As well, the policy underpinnings that preclude Rule 23(b)(2) actions predominantly seeking monetary relief apply with considerable force in this case. The limitation is premised on the notion that such certifications would present troubling due process concerns with respect to absent class members being bound to a judgment with respect to which they had little control. *See generally, Ticor Title Ins. Co. v. Brown*, 511 U.S. 117, 121, 114 S.Ct. 1359, 128 L.Ed.2d 33 (1994) (per curiam) (noting that there is "at least a substantial possibility" that actions seeking monetary damages can be certified only under Rule 23(b)(3), which permits plaintiffs the right to opt out and to receive

notice). Here, Plaintiffs propose to proceed in a rather unusual manner; they intend to try their case only through the use of expert witnesses and scientific studies. No individual Plaintiff would be called upon to testify. In short, Plaintiffs would use the Court as a forum to challenge and to second-guess the FDA's prior approval of Paxil's safety and efficacy, with the significant claim that a jury must be the final arbiter of Paxil's safety. The Court has limited discretion to control how individual Plaintiffs choose to try their case, but it has broad discretion to determine the appropriateness of allowing particular individuals to bind others to the same result. *See Molski*, 318 F.3d at 950; *Armstrong v. Davis*, 275 F.3d 849, 871 n. 28 (9th Cir.2001). Prudent exercise of that discretion requires a denial of Plaintiffs' motion to certify the Equitable Relief Class.[8]

## IV. General Causation Class

■ Requesting use of the Court's powers to separate individual issues under Rule 23(c)(4), Plaintiffs move to certify the General Causation Class to try issues of general causation under Rule 23(b)(3). Plaintiffs' entire trial plan is stated in the one sentence which asserts that after the general causation issues are tried, "Plaintiffs can bring their individual claims in the forum of their choice, with the discovery and trial narrowed to the specific causation and damages issues, and enjoy the benefit of *mutual* collateral estoppel." (Mot. at 25).

Plaintiffs cite, and the Court itself has found, no precedent for this trial methodology. The closest analogue this Court is aware of is multidistrict litigation pursuant to 28 U.S.C. Section 1407, which provides for the transfer of multiple cases to a single forum for pretrial purposes; but Plaintiffs' trial plan complies with neither the letter nor spirit of Section 1407. Multidistrict litigation cases originate in the various district courts and are consolidated only for the purposes of

---

7. Indeed, California law permits an order of restitution of any money which *"may have been* acquired by means of any ... [illegal] practice." *Fletcher v. Security Pacific Nat. Bank,* 23 Cal.3d 442, 451, 153 Cal.Rptr. 28, 591 P.2d 51 (1979) (alterations in original) (citing Cal. Bus. & Prof. Code § 17535).

8. In opposing class certification, GSK also asserted that Plaintiffs lack Article III standing. The Court suspects that there is significant merit to this position; however, the issue was not fully briefed, and the Court reserves further discussion on this matter.

pretrial proceedings. Plaintiffs propose to initiate all cases in this Court, have a jury trial on substantive matters, and then take the second phase of the trial to various other forums. Moreover, Plaintiffs do not appear to propose that these forums would be limited to federal district courts. As an initial matter then, Plaintiffs have again failed to present a manageable and efficient trial plan. *See In re Paxil,* 212 F.R.D. at 548 (citing *Zinser v. Accufix Research Inst., Inc.,* 253 F.3d 1180, 1190 (9th Cir.2001)).

Additionally, the Court's earlier decision with respect to certifying a general causation class noted that a trial with such a class would not enhance efficiency and would only prejudice GSK as well as confuse jurors. *See id.* at 546–48. It also noted the problems of typicality and commonality. *See id.* at 549–50.

Rather than ameliorating these concerns, Plaintiffs' new moving papers only amplify them. It is apparent that Plaintiffs' arguments are predicated on a misconceived notion of the difference between general and individual causation. As stated in *In re Hanford,* a case heavily relied upon by Plaintiffs, the issue to be resolved in the general causation portion of the trial is extremely narrow: "whether exposure to a substance for which a defendant is responsible ... is *capable* of causing a particular injury or condition in the general population." *In re Hanford Nuclear Reservation Litig.,* 292 F.3d 1124, 1133 (9th Cir.2002) (emphasis added). Applied here, the general causation question is limited to whether discontinuation from Paxil is *capable* of causing dizziness, agitation, anxiety, nausea, etc. GSK has never taken the position that precipitant and unsupervised withdrawal is not capable of causing such effects.

Notwithstanding the limited nature of the general causation inquiry, Plaintiffs make the remarkable statement that after answering the general causation questions, the individual causation questions "will largely be [questions] of credibility." (Reply at 20.) This

assertion belies the fact that individual Plaintiffs must still prove that their symptoms came from Paxil, as opposed to, for example, the relapse of the underlying illness or the consumption or discontinuation of other drugs.

Nor can the Court accept Plaintiffs' statement that trying the general causation eliminates the need for each Plaintiff to "hire an expert for testimony at trial." (Reply at 22.) It is well established that when dealing with diseases in human beings, differential diagnosis—the patient-specific process of elimination that medical practitioners use to identify the most likely cause of a set of signs and symptoms from a list of possible causes—is important to the question of specific causation. *See, e.g., Hall v. Baxter Healthcare Corp.,* 947 F.Supp. 1387, 1413 (D.Or.1996). Looking just at the Lead Plaintiffs demonstrates the need for differential diagnosis and for expert testimony during subsequent individual causation trials. For one Lead Plaintiff, expert testimony would be required to prove that his symptoms were not caused by 1) insomnia, 2) an underlying illness that might have caused the insomnia, and 3) his consumption of Ambien. As to the other Lead Plaintiff, testimony would be required to explain why she experienced "withdrawal" symptoms before she ever began to withdraw from Paxil and what effect, if any, her experiences with illicit drugs might have contributed to her symptoms. *See, e.g., Cloud ex rel. Cloud v. Pfizer, Inc.,* 198 F.Supp.2d 1118, 1136 (D.Ariz.2001) (questioning plaintiff's method of showing specific causation where expert "did not fully explore other potential causes of [plaintiff's] suicide, including his alcohol use and family problems, and the role that ephedrine might have played").

Whether Plaintiffs' statements are attributable to over-optimism, hyperbole, or confusion is unclear. What is clear is that closer examination of their trial methodology exposes that trying the general causation issues separately provides few benefits and incurs the heavy risk of confusion and prejudice.[9]

9. The wisdom of such certifications is placed in stark relief even where class certification has been upheld; for even in those cases, the specter of this confusion loomed large. *See, e.g., In re*

*Hanford,* 292 F.3d at 1134 (finding lower court erred because it "blurred its own two-step causation inquiry"); *Sterling v. Velsicol Chem. Corp.,* 855 F.2d 1188 (6th Cir.1988) (calling failure to

Plaintiffs proposed class cannot meet Rule 23(b)(3)'s "superiority" requirement nor is it "appropriate" under Rule 23(c)(4). *See, e.g., Emig v. Amer. Tobacco Co.*, 184 F.R.D. 379, 395 (D.C.Kan.1998); *Hamilton v. Accu–tek*, 935 F.Supp. 1307, 1332 (E.D.N.Y.1996), *rev'd. on other grounds.*

## V. Conclusion

For the foregoing reasons, Plaintiffs' Second Motion for Class Certification is DENIED. GSK's unopposed Motion to Dismiss Non–California Plaintiffs is GRANTED.

IT IS SO ORDERED.

differentiate between general and particular causation "an understandably easy trap to fall  into").