**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

ADRIANNE ADAMS, Individually and on behalf of others similarly situated, and as a private attorney general,
*Plaintiff-Appellee*,

v.

WEST MARINE PRODUCTS, INC., a California corporation,
*Defendant-Appellant.*

No. 20-15444

D.C. No.
3:19-cv-01037-VC

OPINION

Appeal from the United States District Court
for the Northern District of California
Vince Chhabria, District Judge, Presiding

Argued and Submitted April 14, 2020
San Francisco, California

Filed May 13, 2020

Before: Richard A. Paez and Richard R. Clifton, Circuit
Judges, and M. Douglas Harpool,[*] District Judge.

Opinion by Judge Paez

---

[*] The Honorable M. Douglas Harpool, United States District Judge
for the Western District of Missouri, sitting by designation.

**SUMMARY**[**]

**Class Action**

The panel affirmed the district court's order remanding a putative class action to state court after it was removed to federal court under the Class Action Fairness Act ("CAFA"), pursuant to 28 U.S.C. § 1332(d).

A former West Marine Products, Inc. employee filed the putative class action on behalf of herself and other similarly situated current and former employees, alleging violations of California wage and hour laws.

The local controversy exception, and the home state exception (sometimes called the "home state controversy exception"), provide exceptions to CAFA jurisdiction. Under the discretionary base of the home state exception, the district court may decline to exercise jurisdiction where more than one-third of the putative class, and the primary defendants, are citizens of the state where the action was originally filed. Invoking the discretionary home state controversy exception, the district court declined to exercise jurisdiction and ordered the case remanded to state court.

The panel held that the district court reasonably inferred from the facts in evidence that it was more likely than not that more than one-third of class members were California citizens. The panel held further that the district court did not err in raising sua sponte an exception to CAFA jurisdiction.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Although the local controversy and home state exceptions are not jurisdictional, the exceptions are treated as a form of abstention that a court may raise sua sponte.

The panel held that the district court provided the parties with an adequate opportunity to address whether the home state exception to CAFA jurisdiction applied when the district court invited briefing on the home state exception to CAFA jurisdiction, which encompasses both the mandatory and discretionary bases for remand. The district court considered the six factors to determine whether it should exercise its discretion to remand to state court. 28 U.S.C. § 1332(d)(3). The panel concluded that the district court did not abuse its discretion in concluding that remand was appropriate.

## COUNSEL

Ashley Farrell Pickett (argued) and Mark D. Kemple, Greenberg Traurig LLP, Los Angeles, California, for Defendant-Appellant.

Heather Davis (argued), Amir Nayebdadash, and Priscilla Gamino, Protection Law Group LLP, El Segundo, California, for Plaintiff-Appellee.

## OPINION

PAEZ, Circuit Judge:

West Marine Products, Inc. ("West Marine") appeals the district court's order remanding plaintiff Adrianne Adams's putative class action to state court. Adams originally filed her wage and hour action in San Mateo County Superior Court, and West Marine removed the case to federal court under the Class Action Fairness Act ("CAFA"). Invoking the discretionary home state controversy exception to CAFA jurisdiction, the district court declined to exercise jurisdiction and ordered the case remanded to state court.

On appeal, West Marine principally challenges whether the district court erred in concluding that Adams met her burden of showing by a preponderance of the evidence that greater than one-third of the putative class members were California citizens at the time of removal to federal court— a prerequisite to the court's exercise of its discretion. In addition, West Marine contends that the district court erred in sua sponte invoking the discretionary home state exception to CAFA jurisdiction without giving West Marine the opportunity to brief or argue the issue. We reject both arguments and affirm the district court's order remanding the action to state court.

## I.

Adams, a former West Marine employee, filed this putative class action on behalf of herself and other similarly situated current and former West Marine employees in state court. The complaint alleged violations of California wage and hour laws and defined the putative class as "[a]ll current and former non-exempt employees of Defendants within the State of California at any time commencing four (4) years

preceding the filing of Plaintiff's complaint up until the time that notice of the class action is provided to the class."

West Marine timely removed the action to federal court, pursuant to 28 U.S.C. § 1332(d). Adams promptly moved to remand the action to state court. The district court subsequently ordered the parties to file supplemental briefs addressing the applicability of the home state exception to CAFA jurisdiction and, after receiving the parties' briefing, granted Adams's request for leave to take jurisdictional discovery to establish the applicability of the exception. The district court also denied the motion to remand without prejudice to filing a renewed motion.

In response to Adams's discovery requests, West Marine produced a list of contact information (including name, phone number, last known personal address, hire date, and, where relevant, termination date) in its possession for the 1,810 putative class members.[1] The list revealed 1,714 putative class members with a last known address in California; and 96 with a last known non-California address, 61 of whom were transferred to one of West Marine's branches outside California. West Marine cross-checked a sample of these addresses against the addresses listed on class members' most recent wage statements and Form W-2s and confirmed their accuracy.[2] West Marine declined to

---

[1] The list included 1,813 putative class members but Adams's counsel identified three duplicates.

[2] Specifically, West Marine's sampling revealed a "95.5% accuracy rate" and, "[f]or the putative class members whose previously-provided contact information did not match their most recent W-2 form [or wage statement], [West Marine] confirmed that the . . . . information provided . . . [previously] is in fact the most up-to-date contact information for these putative class members."

provide Adams the other information she sought—namely, "information relating to payroll, taxes, schedules, wage statements, human resources, and/or benefits"—and claimed that such information was either irrelevant or too burdensome to produce.

Following completion of discovery, Adams renewed her motion to remand the case to state court under the home state and local controversy exceptions to CAFA jurisdiction. In support of her motion, she offered her own sworn declaration, which detailed her onboarding experience as a new hire and her experience onboarding other West Marine employees as a store manager.[3]  West Marine opposed the motion to remand.

The district court granted Adams's renewed motion to remand. The court found that Adams met her burden of showing by a preponderance of the evidence that more than one-third of the class members were California citizens. West Marine timely petitioned for permission to appeal under 28 U.S.C. § 1453(c), which a motions panel granted. This appeal followed.

## II.

We have jurisdiction pursuant to 28 U.S.C. § 1453(c). A district court's factual findings are reviewed for clear error. *Mondragon v. Capital One Auto Fin.*, 736 F.3d 880, 886 (9th Cir. 2013). Ordinarily, "[w]e review a district court's remand order de novo." *Id.* at 883. Where, as here, a district court orders remand pursuant to the *discretionary* home state

---

[3] Adams offered an additional declaration to which West Marine objected. Because the record evidence is sufficient to support the district court's remand order without reliance on the declaration, we do not consider it here.

exception, we join our sister circuits in reviewing the court's exercise of discretion under an abuse of discretion standard. *See, e.g.*, *Speed v. JMA Energy Co.*, 872 F.3d 1122, 1128 (10th Cir. 2017) ("We review for abuse of discretion the district court's order remanding under the discretionary exception in § 1332(d)(3)."); *Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.*, 485 F.3d 804, 809 (5th Cir. 2007) ("We review the district court's remand order [under the discretionary provision] for abuse of discretion."). "An abuse of discretion will be found if the district court based its decision on an erroneous legal standard or clearly erroneous finding of fact." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) (quotation marks omitted).

## III.

### A.

CAFA provides, in relevant part, that federal district courts shall have original jurisdiction over civil class actions where the matter in controversy exceeds five million dollars and "any member of a class of plaintiffs is a citizen of a State different from any defendant[.]" 28 U.S.C. § 1332(d)(2). "Congress enacted CAFA in 2005 to 'curb perceived abuses of the class action device which, in the view of CAFA's proponents, had often been used to litigate multistate or even national class actions in state courts.'" *Corber v. Xanodyne Pharm., Inc.*, 771 F.3d 1218, 1222 (9th Cir. 2014) (en banc) (quoting *Tanoh v. Dow Chem. Co.*, 561 F.3d 945, 952 (9th Cir. 2009)). "Because a party bringing suit in its own State's courts might (seem to) enjoy . . . a home court advantage against outsiders, federal diversity jurisdiction provides a neutral forum for parties from differing States[.]" *Ehrman v. Cox Comms., Inc.*, 932 F.3d 1223, 1226 (9th Cir. 2019) (internal quotation marks and citations omitted). Thus,

"CAFA was intended to strongly favor federal jurisdiction over *inter*state class actions."  *King v. Great Am. Chicken Corp, Inc.*, 903 F.3d 875, 878 (9th Cir. 2018) (emphasis added).

Congress provided exceptions to CAFA jurisdiction, however, to allow truly *intra*state class actions to be heard in state court.  *See Bridewell-Sledge v. Blue Cross of Cal.*, 798 F.3d 923, 928 (9th Cir. 2015).  There are two exceptions relevant here: (1) the local controversy exception and (2) the home state exception (sometimes called the "home state controversy exception").  Under the local controversy exception, a district court "shall" decline to exercise jurisdiction when more than two-thirds of the putative class members are citizens of the state where the action was filed, the principal injuries occurred in that same state, and at least one significant defendant is a citizen of that state.  28 U.S.C. § 1332(D)(4)(A).

The home state exception accords two bases for remand: one mandatory and the other within the district court's discretion.  Under the first, the district court "shall" decline to exercise jurisdiction where "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed."  28 U.S.C. § 1332(d)(4)(B) (the "mandatory home state exception").  Under the second, a district court "may, in the interests of justice and looking at the totality of the circumstances, decline to exercise jurisdiction" when more than *one-third* of the putative class, and the primary defendants, are citizens of the state where the action was originally filed.  28 U.S.C. § 1332(d)(3) (the "discretionary home state exception").  CAFA enunciates six factors for a district court to consider in deciding whether to

decline jurisdiction under this discretionary home state exception.  28 U.S.C. § 1332(d)(3)(A)–(F).

Somewhat perplexingly, both the mandatory and discretionary home state exceptions are often referred to by the same name—that is, simply, as the "home state exception."  *See e.g.,* 14C Wright & Miller, Fed. Prac. & Proc. (Rev. 4th ed.) § 3724; 2 Newberg on Class Actions (5th ed.) § 6:21.  Indeed, the legislative history of CAFA likewise reveals that the term "home state exception" was used to refer to both the mandatory and discretionary exceptions to CAFA jurisdiction.  *See, e.g.*, S. Rep. 109-14, at 28 (Feb. 28, 2005), *as reprinted in* 2005 U.S. Code Cong. & Admin. News 3, 28 ("[CAFA] includes several provisions ensuring that where appropriate, state courts can adjudicate certain class actions that have a truly local focus.  The first is the 'Home State' exception.  Under this provision, if two-thirds or more of the class members are from the defendant's home state, the case would not be subject to federal jurisdiction . . . . For cases brought in a defendant's home state in which between one-third and two-thirds of the class members were citizens of that state, federal jurisdiction would also exist; however, a federal judge would have the discretion, in the interests of justice, to decline to exercise that jurisdiction . . . . In addition, [the bill] contains a 'Local Controversy Exception' . . . . ").  For clarity, we refer to the first home state exception as "the mandatory home state exception" and the second as "the discretionary home state exception."

Once CAFA jurisdiction has been established, *see* 28 U.S.C. § 1332(d)(2) and (d)(5), the burden falls on the party seeking remand—here, Adams—to show that an exception to CAFA jurisdiction applies.  *See Serrano*, 478 F.3d at 1021–22.  "To meet this burden, the moving

party must provide *some* facts in evidence from which the district court may make findings regarding class members' citizenship." *Brinkley v. Monterey Fin. Servs., Inc.*, 873 F.3d 1118, 1121 (9th Cir. 2017) (quotation marks omitted) (emphasis added). Citizenship is determined "as of the date the case became removable[.]" *Mondragon*, 736 F.3d at 883; 28 U.S.C. § 1332(d)(7). "A district court makes factual findings regarding jurisdiction under a preponderance of the evidence standard." *Id.* at 884. Although such a finding must be based on more than mere "guesswork," *id.*, we have repeatedly cautioned that the burden of proof on a plaintiff "should not be exceptionally difficult to bear." *Id.* at 886.

"To be a citizen of a state, a natural person must first be a citizen of the United States . . . . [Her] state citizenship is then determined by her state of domicile[.]" *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). One's domicile is her "permanent home"—that is, where (i) she resides, (ii) "with the intention to remain or to which she intends to return." *Id.* At minimum, a person's residence constitutes *some* evidence of domicile. *Mondragon*, 736 F.3d at 886. "[A] party with the burden of proving citizenship may rely on the presumption of continuing domicile, which provides that, once established, a person's state of domicile continues unless rebutted with sufficient evidence of change." *Id.* at 885.

B.

Here, the district court reasoned that, while it "*must* remand the case if two-thirds or more" class members are citizens of California, "since the result here would be the same under either [the mandatory or discretionary home state exception] provision, the Court will focus on whether the class meets the lower [one-third] citizenship threshold of

section § 1332(d)(3)[,]" under which it *may* remand.  Given that "[t]he last known addresses of over 90% of class members are in California," the district court concluded that "[f]ar more likely than not, the class exceeds that [one-third] threshold."

West Marine argues that the district court erred in inferring that more than one-third of the putative class members were California citizens.  We disagree.

1.

We have on several occasions addressed the evidence that a plaintiff must adduce to meet her burden of demonstrating class member citizenship.  In *Mondragon*, we vacated the district court's remand order where the plaintiff failed to produce *any* evidence of putative class members' citizenship and relied solely on his proposed class definitions.  *Id.* at 882–83.  We concluded that the class definitions standing alone—without any evidence proffered—were insufficient to satisfy the plaintiff's burden:

> We imagine that some automobiles were purchased and registered in California by members of the military, by out-of-state students, by owners of second homes, by other temporary residents who maintained legal citizenship in other states, and by persons who live in California but are not U.S. citizens . . . . and we imagine that at least some purchasers who were California citizens at the time of purchase subsequently moved to other states, such that they were not California citizens as of [the removal date]. There is simply no evidence in the record to support a finding that the group of citizens

outnumbers the group of non-citizens by more than two to one.

*Id.* at 884.

In *King*, we again vacated a remand order where the defendant stipulated that at least two-thirds of the putative class had last known addresses in California. 903 F.3d at 876. We determined that such a stipulation was insufficient, without more, to meet the plaintiff's burden to show that more than two-thirds of class members were domiciled in California. *Id.* at 880. Such a stipulation would have required us to assume that nearly 100% of class members with last known addresses in California were also California citizens—an assumption that would have amounted to little more than guesswork. *Id.* This we declined to do:

> [G]iven the narrow cushion provided by the stipulation, the likelihood that some putative class members were legally domiciled in or subsequently relocated to another state, and the probability that some class members were not United States citizens, we cannot conclude that there was sufficient evidence to support a finding that greater than two-thirds of the putative class members were California citizens.

*Id.* at 879–80.

### 2.

The record evidence here far exceeds that in *Mondragon* and *King*. Unlike in *Mondragon*, Adams did not rely solely on her proposed class definition. Rather, she put forth

evidence demonstrating that more than 90% of putative class members had last known mailing addresses in California. In addition, she offered her own sworn declaration that she had been required upon hire to certify her California (and United States) citizenship to West Marine; and that, as a West Marine store manager, she was "required to ask applicants whether they were citizens of California[.]"

Unlike the "narrow cushion" relied upon by the plaintiffs in *King*, Adams offered evidence showing that more than 90% of class members had last known mailing addresses in California—a percentage far greater than the one-third (or roughly, 33%) required for remand. Of course, last known mailing addresses are not a direct proxy for residence, and residence is not a direct proxy for citizenship: As the district court recognized, "[s]ome of the verified California addresses probably belong to people who are not California citizens, or even citizens of the United States." Nevertheless, given the substantial cushion afforded by the percentage of class members with last known California addresses, as compared to the percentage of class member citizens required for a discretionary remand, Adams readily met her burden.

West Marine's contention that Adams failed to offer evidence of putative class members' United States citizenship—a prerequisite to establish California citizenship—is unconvincing. *See Kanter*, 265 F.3d at 857. As noted above, the record includes Adams's sworn declaration, which states that she (1) was required to ask job applicants whether they were United States citizens; (2) was herself asked upon hire to certify her United States citizenship; (3) never herself hired a "foreign worker" under an employment-related visa; and (4) never heard of anyone at West Marine hiring a "foreign worker" under an

employment-related visa.  We find nothing illogical in the district court's determination that a sufficient number of class members—90% of whom had last known addresses in California—are more likely than not United States citizens.

We caution that CAFA does not demand a plaintiff show the citizenship of each class member with certainty beyond a reasonable doubt.  And, as the Fifth Circuit observed, requiring a district court to "examin[e] the domicile of every proposed class member before ruling on the citizenship requirement" would render class actions "totally unworkable." *Preston*, 485 F.3d at 816 (internal citations omitted).  Rather, CAFA requires only that a plaintiff show, by a mere preponderance of the evidence, that the citizenship requirement is met.  This burden should not be "exceptionally difficult to bear," *Mondragon*, 736 F.3d at 886, and should be considered with the goal of CAFA in mind: to keep interstate actions in federal court and truly intrastate actions in the state courts.  *King*, 903 F.3d at 878.

In sum, we hold that the district court reasonably inferred from the facts in evidence that it was more likely than not that more than one-third of class members were California citizens.

## C.

West Marine next argues that the district court abused its discretion by sua sponte raising the discretionary home state exception.  West Marine reasons that because the exceptions to CAFA jurisdiction are not jurisdictional, but rather rooted in the abstention doctrine, the district court should not have raised the exception on its own.

The local controversy and home state exceptions are not jurisdictional.  *See, e.g.*, *Visendi v. Bank of Am., N.A.*,

733 F.3d 863, 869 (9th Cir. 2013). Rather, as West Marine recognizes, we treat the local controversy and home state exceptions as a form of abstention. We may raise abstention sua sponte. *See, e.g.*, *Bellotti v. Baird*, 428 U.S. 132, 143 n.10 (1976); *H.C. ex rel. Gordon v. Koppel*, 203 F.3d 610, 613 (9th Cir. 2000); *Columbia Basin Apt. Ass'n v. City of Pasco*, 268 F.3d 791, 799 (9th Cir. 2001). Thus, although not required to do so, *see Kuxhausen v. BMW Fin. Servs. NA LLC*, 707 F.3d 1136, 1139 n.1 (9th Cir. 2013), a district court may raise sua sponte an exception to CAFA jurisdiction. The district court did not err.

### D.

Finally, West Marine argues that the district court abused its discretion by relying on the discretionary home state exception without inviting briefing on the applicability of the exception. We find that the record does not support this contention.

Six months before issuing the remand order, the district court invited briefing on the home state exception to CAFA jurisdiction. The home state exception encompasses both the mandatory and the discretionary bases for remand. *See, e.g.*, Wright & Miller, Fed. Prac. & Proc. § 3724 ("CAFA also contains a provision for the discretionary decline of jurisdiction—the home-state exception."); Newberg on Class Actions § 6:21 ("While CAFA's local controversy exception *requires* a federal court to decline jurisdiction, the defendant's home-state exception allows the trial court judge discretion to remand the suit[.]") (emphasis in original); S. Rep. 109-14, at 28 (same). Accordingly, we conclude the district court provided the parties with an adequate opportunity to address whether the exception applied.

We note also that it is unclear what additional evidence or arguments West Marine could have offered had it chosen to brief the discretionary home state exception. West Marine does not say. The primary difference between the mandatory and discretionary bases for remand (aside from the citizenship threshold) is the requirement that a district court consider six factors, no one of which is dispositive, to determine whether it should in the "interests of justice" exercise its discretion to remand the case to state court. 28 U.S.C. § 1332(d)(3). The factors—which include "whether the claims asserted involve matters of national or interstate interest"; "whether the claims asserted will be governed by laws of the State in which the action was originally filed or by the laws of other States"; and "whether the action was brought in a forum with a distinct nexus with the class members, the alleged harm, or the defendants"— would seem here to mostly, if not exclusively, support remand. *Id.* § 1332(d)(3)(A), (B), (D). The district court considered the six factors and determined that remand was appropriate.[4] We cannot say that the court abused its discretion in so concluding.

## IV.

In sum, we hold that the district court neither erred in finding that it was more likely than not that greater than one-third of the putative class were California citizens nor abused its discretion in declining to exercise jurisdiction pursuant to

---

[4] Notably, West Marine does not appear to challenge the district court's analysis of the six factors.

the discretionary home state exception.  We affirm the order remanding this case to state court.

**AFFIRMED.**