**Catherine Jane VON KENNEL GAUDIN, Petitioner– Appellant,**

v.

**John R. REMIS, Jr., Respondent– Appellee.**

**No. 01–15096.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 2, 2001.

Filed March 11, 2002.

---

Paul A. Lynch, Honolulu, HI, for the petitioner-appellant.

Chunmay Chang, Honolulu, HI, for the respondent-appellee.

Before THOMPSON, O'SCANNLAIN, and BERZON, Circuit Judges.

O'SCANNLAIN, Circuit Judge.

We must decide whether the parent of an abducted child may maintain suit under the International Child Abduction Remedies Act and the Hague Convention on the Civil Aspects of International and Child Abduction when she relocates permanently to the United States after filing suit while residing abroad.

## I

Catherine Gaudin and John Remis lived in Hawaii as a couple from 1988 until 1992. During their relationship, they had two children, John and Andreas. Gaudin and Remis ended their relationship in 1992, with Gaudin and the children relocating to Quebec, Canada. As part of the relocation, Gaudin and Remis entered into a stipulated custody judgment in Hawaii Family Court. They agreed that Gaudin would receive sole custody of the children, subject to visitation rights by Remis.

During the past few years, Remis has become increasingly concerned about Gaudin's treatment of the children. He claims that Gaudin has become a "religious fanatic" who has psychologically harmed the children by imposing bizarre restrictions on their lives. For example, he alleges that Gaudin prohibits them from playing with other children, refuses to allow them to watch television, and dresses them in odd and inappropriate clothing.

In June 2000, Remis picked up the children from Gaudin for an extended visit in Hawaii. He later refused to return the children, instead filing an action in Hawaii Family Court, seeking sole custody in light of Gaudin's recent behavior. Gaudin appeared in the action, but argued that the court lacked jurisdiction. In July 2000, the Hawaiian court awarded custody of the children to Remis.

Gaudin meanwhile filed a petition in federal court under the International Child Abduction Remedies Act ("ICARA"), 42 U.S.C. § 11603(b), and the Hague Convention on the Civil Aspects of International and Child Abduction (the "Hague Convention" or the "Convention"), October 25, 1980, T.I.A.S. No. 11670, 19 I.L.M. 1501, seeking return of the children to Canada. The court denied the petition, concluding that the children would face a grave risk of psychological harm if returned to Canada with Gaudin.

After the parties briefed this appeal, Remis moved to dismiss for mootness. Remis alleges that Gaudin has recently moved permanently to Hawaii. He claims that Gaudin has sold her home in Canada and purchased a new one in Hawaii. Further, he claims that Gaudin has secured a Hawaiian real estate broker's license. Finally, Gaudin allegedly married her attorney for this appeal, who is licensed to practice in Hawaii. Because both parents and the children are now permanently located in Hawaii, Remis claims that neither ICARA nor the Hague Convention can afford her any relief.

## II

The Hague Convention, which Congress implemented through ICARA, was designed to address the problem of parental international child abduction.[1] art. 1., 19 I.L.M. at 1501; *Mozes v. Mozes*, 239 F.3d 1067, 1069–70 (9th Cir.2001); *Shalit v. Coppe*, 182 F.3d 1124, 1127 (9th Cir. 1999). The Signatories perceived that parents were wrongfully taking their children across international lines "in search of a more sympathetic court" for custody proceedings. *Friedrich v. Friedrich*, 983 F.2d

---

1. Along with the United States, Canada is a signatory to the Convention. 19 I.L.M. at 1501.

1396, 1400 (6th Cir.1993); *see also Mozes,* 239 F.3d at 1070. The Convention sought to eliminate this motivation by allowing for the prompt return of abducted children. art. 2, 19 I.L.M. at 1501; *Mozes,* 239 F.3d at 1070.

A Convention petitioner must show that the removal of her child was "wrongful." art. 3, 19 I.L.M. at 1501. Article 3 defines "wrongful" as

a) ... in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and

b) at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention

*Id.; see also* 42 U.S.C. § 11603(e)(1), (f)(2).

■ Thus, a petitioner must show that at the time of removal (1) she exercised custody over the child, (2) under the laws in which the child was habitually resident, and (3) that the abductor breached those custody rights by removing the child. Art. 3, 19 I.L.M. at 1501; *see also Mozes,* 239 F.3d at 1070.

■ Generally, a court must return a wrongfully abducted child. art. 12, 19 I.L.M. at 1502; *Shalit,* 182 F.3d at 1128. The Convention does not extend to custody determinations. *E.g., Shalit,* 182 F.3d at 1128. Rather, the Convention simply restores the pre-abduction status quo by allowing for the return of a wrongfully abducted child. *E.g., id.* An exception exists if the abductor can establish one of the Convention's narrow affirmative defenses. arts. 13, 20, 19 I.L.M. at 1502–03; § 11603(e)(2). Of particular importance, the abductor may show that the child

would suffer a "grave risk" of "physical or psychological harm" if he were returned. art. 13(b), 19 I.L.M. at 1502; § 11603(e)(2)(A).

### III

In an affidavit submitted after briefing was completed for this appeal, Remis claims that Gaudin has recently moved permanently to Hawaii. He contends that Gaudin's action is moot because both parents and the children now live permanently in Hawaii. For the moment, we shall assume that Remis's factual allegation regarding Gaudin's relocation to Hawaii is true.

In light of Gaudin's move, she no longer seeks the return of her children to Canada. Rather, she seeks the transfer of her children to *her* within Hawaii, where she purportedly intends to keep them for the indefinite future.

■ The Convention's principal remedy is the return of the abducted child. art. 12, 19 I.L.M. at 1502; *Shalit,* 182 F.3d at 1128. However, the Convention does not make clear to what country a child must be returned. The Preamble recites the Convention's goal as the return of children "to the State of their *habitual residence.*" 19 I.L.M. at 1501 (emphasis added). However, the actual text of the Convention is silent as to where the child should be returned. Article 12 merely provides that a wrongfully removed child should be "returned ... forthwith." 19 I.L.M. at 1502.

The Convention's official commentary reveals that this silence was intentional. *See* Elisa Perez Vera, Explanatory Report ¶ 110, in 3 Hague Conference on Private International Law, Acts and Documents of the Fourteenth Session, Child Abduction 459–60 (1982) [hereinafter Perez Verz Report].[2] The commentary explains that the

---

2. Elisa Perez–Vera was the official Convention reporter, and her report is "recognized

by the Conference as the official history and

Convention rejected a proposal that would have required a child to be returned to his habitual residence. *Id.* The Convention was concerned that such a proposal would prove "inflexible" when the petitioner moves from the State of the child's habitual residence post-abduction. *Id.* In other words, the Convention did not provide that a child be returned to his pre-abduction habitual residence if the petitioner had relocated to a different country. The Commentary states that the Convention intended that the child be transferred to the petitioner's new residence in these circumstances. *Id.*

The State Department's commentary on the Convention contains a similar discussion. "The Convention does not technically require that the child be returned to his or her State of habitual residence, although in the classic abduction case this will occur. If the petitioner has moved . . . the child will be returned to the petitioner, not the State of habitual residence." Hague International Child Abduction Convention; Text and Legal Analysis, 51 Fed. Reg. 10404 (Mar. 26, 1986).

■■■ We need not resolve the broad question of whether, or under what circumstances, a child should be returned to a petitioner's new, post-abduction residence. This case presents unusual circumstances: Gaudin moved to the *same country* in which Remis and the children are now found. The Convention cannot be invoked when the petitioner moves permanently to the same country in which the abductor and the children are located.

■■■ The Convention does not extend to custody determinations, *i.e.*, which parent should care for the child. *E.g., Shalit*, 182 F.3d at 1128. Rather, the Convention is designed to decide *which country* should make the custody determination. *See* art. 1(b), 19 I.L.M. at 1501 (framing an object of the Convention as "to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States"); *see also Mozes*, 239 F.3d at 1070. In other words, the Convention presumes that the petitioner is located in a different country from that of the abductor and the child, such that multiple countries could potentially make a custody determination.

However, when a petitioner relocates permanently to the same country in which the abductor and the children are found, she casts her lot with the judicial system of that country. When Gaudin purportedly relocated, she severed her ties with Canada and made Hawaii the proper forum to determine custody matters. Gaudin's potential relief lies with the Hawaiian courts, not with the Convention. Therefore, if Gaudin has moved permanently to Hawaii, her action is indeed moot. *See, e.g., IRS v. Pattullo (In re Pattullo)*, 271 F.3d 898, 901 (9th Cir.2001) ("If an event occurs while a case is pending on appeal that makes it impossible for the court to grant any effectual relief whatever to a prevailing party, the appeal is moot and must be dismissed. . . .").

IV

■■■ We are hesitant, however, to conclude on this record that Gaudin has moved permanently to Hawaii. Remis's allegations were presented to this court in a last-minute affidavit. At oral argument, Gaudin suggested that she may have moved to Hawaii for the sole purpose of regaining custody of the children to return to Canada. As an appellate court, we are ill-equipped to resolve this factual dispute.

commentary on the Convention." *Shalit*, 182 F.3d at 1127–28 (internal quotation marks omitted).

We therefore remand to the district court for an evidentiary hearing to determine whether Gaudin has moved permanently to Hawaii. If the district court determines that Gaudin has relocated, her action is moot; the district court then may wish to consider whether to vacate its previous judgment. *See Doe v. Madison Sch. Distr. No. 321*, 177 F.3d 789, 799 (9th Cir.1999) (en banc). Since we deny the motion to dismiss and remand for an evidentiary hearing, we do not reach the merits of the appeal at this time. However, if the district court determines that Gaudin's action is not moot, any subsequent appeal shall be assigned to this panel.

Motion to Dismiss DENIED; REMANDED for further proceedings.