Catherine Jane Von Kennel GAUDIN,
Petitioner–Appellant,

v.

John R. REMIS, Jr., Respondent–
Appellee.

No. 03–15687.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 11, 2004.

Filed Aug. 10, 2004.

---

Paul A. Lynch, Lynch Ichida Thompson Kim & Hirota, Honolulu, HI, for the petitioner-appellant.

Edmundo B. Espinoza, Del Mar, CA, for the respondent-appellee.

Before: RYMER, HAWKINS, and BYBEE, Circuit Judges.

BYBEE, Circuit Judge:

Catherine Jane Von Kennel Gaudin appeals from the district court's dismissal of her petition for the return of her two children from the United States to Canada under the Hague Convention on the Civil Aspects of International Child Abduction, October 25, 1980, T.I.A.S. No. 11670, 19 I.L.M. 1501 ("Hague Convention" or "Convention"). In *Gaudin v. Remis*, 282 F.3d 1178 (9th Cir.2002) (*"Gaudin I "*), this court directed the district court to conduct an evidentiary hearing to determine whether Gaudin had moved permanently to Hawaii and, if the court determined that she had relocated, to dismiss her petition as moot. After conducting the hearing, the district court concluded that Gaudin had indeed moved permanently to Hawaii and accordingly dismissed the petition as moot. Gaudin appeals. We conclude that the district court correctly chose to apply the federal common law of domicile, but that the court erred in applying that law. We therefore reverse.

I.

We revisit the facts and procedural history, previously set forth in *Gaudin I*, 282 F.3d at 1181. Catherine Gaudin and John Remis lived in Hawaii as a couple from 1988 until 1992. During that time, they had two sons, John (born in 1990) and Andreas (born in 1992). In 1992 the relationship ended, and in January 1994, Gau-din moved to Quebec, Canada, with the children.

In July 1994, in Hawaii Family Court, Gaudin and Remis entered into two stipulated judgments, one for each child, identical except for the children's names and birthdates. The judgments provided that Gaudin would have sole custody of the children, subject to visitation rights in Remis. Each judgment also provided that "on all matters concerning this Judgement, any decision would be subject to the determination of a court of competent jurisdiction in the country in which the Mother and the Child are residing, taking into consideration the best interest of the child."

The ensuing arrangement was that the children lived with Gaudin in Quebec for most of the year and visited Remis in Hawaii for several weeks each summer. This arrangement continued until 2000, when Gaudin informed Remis that she planned to homeschool the children the coming fall. Remis disagreed with the plan and, on July 22, 2000, emailed Gaudin, threatening to file a custody modification action if she did not abandon the idea. At the time, the children were in Hawaii on the summer visit allowed under the stipulated judgments.

Both parents then went to court in their respective jurisdictions to obtain custody. On July 26, 2000, Gaudin filed a motion in the Superior Court of the Province of Quebec to recognize the stipulated judgments. On July 27, 2000, Remis obtained from the Hawaii Family Court two temporary restraining orders, one for each child, and orders awarding temporary custody of the children to him. The Hawaii Family Court set the matter for hearing on August 31, 2000.

Meanwhile, on August 22, 2000, the Quebec Superior Court issued a judgment recognizing the July 1994 Hawaii Family

Court stipulated judgments and declaring them enforceable in Quebec. On August 28, 2000, Gaudin filed a motion in Hawaii Family Court requesting that it decline jurisdiction on the ground that the custody proceedings should occur in Canada. On August 30, 2000, Gaudin filed a motion in the Quebec Superior Court for an order compelling the return of the children.

On September 25, 2000, the Hawaii Family Court issued an order noting that it had conferred with a judge of the Quebec Superior Court; that both Hawaii and Quebec had jurisdiction, as both had substantial contacts; that even though the parties had designated Canada as the venue, the best interests of the children favored Hawaii; and that there was a grave risk that the children would be psychologically harmed if they were returned to their mother. The court therefore denied Gaudin's request that it decline jurisdiction and asserted jurisdiction over the permanent custody and visitation issues, granted temporary sole custody to Remis, and set a trial schedule, with pretrial proceedings in November 2000 and trial in December 2000.

On October 7, 2000, Gaudin amended her motion in Quebec Superior Court to request an attestation that Remis's retention of the children was wrongful under the Hague Convention. On November 22, 2000, she also filed, in the United States District Court for the District of Hawaii, a petition for the return of her children, invoking the International Child Abduction Remedies Act ("ICARA"), 42 U.S.C. §§ 11601–11611, which implements the Hague Convention in the United States. The next day, the Quebec Superior Court issued a judgment concluding that the children had been subject to "an international abduction (wrongful removal or retention)" under the Hague Convention.

Shortly thereafter, on December 11, 2000, the federal district court in Hawaii denied Gaudin's ICARA petition, allowing the Hawaii Family Court proceedings to continue. The court agreed with the Canadian court's determination that Remis's retention of his children was wrongful under the Hague Convention, because the children's habitual residence was Canada and the retention was not permitted under the July 1994 Hawaii Family Court judgments recognized in Canada in August 2000. The court, however, continued that the Hague Convention sets out a number of defenses to the return of wrongfully retained children, and concluded that Remis had established a defense. In particular, Article 13(b) of the Convention allows a country to withhold an abducted child if "there is a grave risk that his or her return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation." Art. 13(b), 19 I.L.M. at 1502; 42 U.S.C. § 11603(e)(2)(A). The court noted that the September 25, 2000 Hawaii Family Court order had found that returning the children to their mother would pose a grave risk to the children's psychological health. After conducting its own review of the evidence, the district court reached the same conclusion regarding grave risk, decided that Remis's temporary custody under the Hawaii Family Court order was lawful, and declined to stay further proceedings in the Family Court. ·

Gaudin appealed to this court. On appeal, Remis moved to dismiss Gaudin's petition as moot on the ground that Gaudin had moved to Hawaii. On March 11, 2002, we declined to reach the merits of the appeal and held that, if Gaudin had "moved permanently" to Hawaii—and not "for the sole purpose of regaining custody of the children to return to Canada"—her ICARA petition was moot. 282 F.3d at 1183. Because the record was insufficient

for us to make this factual determination, we remanded the case for the district court to hold an evidentiary hearing on the matter, with instructions to dismiss the petition as moot if Gaudin had in fact moved permanently to Hawaii. *Id.* at 1183–84.

## II.

The district court held the evidentiary hearing on January 10, 2003. On March 3, 2003, the court issued findings of fact and conclusions of law. As to the law, the court expressed some uncertainty about whether the court should apply a domicile test in determining whether Gaudin had moved permanently to Hawaii, and about which party had the burden of proof. It noted, however, that the parties generally agreed that "factors stated in case law and authorities regarding the meaning of a person's domicile are the type of factors" the court should consider.

The district court made the following factual findings, drawn almost verbatim from a stipulation of facts submitted jointly by the parties. When Gaudin filed her petition under the Hague Convention in the district court on November 22, 2000, she was living in a home she owned in Hudson, Quebec, Canada. After the district court's December 11, 2000, denial of the petition, Gaudin sold that home, moved to Hawaii, and no longer owns any real property in Canada. The only real property Gaudin owns is a home in Hawaii that she bought around May 2001, and in which she has lived since then. She moved all her belongings from Canada to Hawaii. She also moved all the children's belongings from Canada to Hawaii and gave them to Remis.

Gaudin closed her bank accounts in Canada, has a checking account in Hawaii, and has no other bank or investment accounts. She shipped her Jeep from Canada to Hawaii and registered it in Hawaii, and bought and registered another car in Hawaii. She holds a real estate broker's license from the state of Hawaii; listed a Honolulu address as her place of business in her mortgage application; has a Hawaiian General Excise Tax number; pays real estate taxes in Hawaii; is a member of a Honolulu church; and teaches piano to two students from her church.

The court further found, in accordance with the parties' stipulation, that Gaudin has two adult daughters and two minor sons, all of whom live in Hawaii. Also, on June 29, 2001, Gaudin married her attorney, Paul Lynch, a partner in a Honolulu firm. They now live at the home Gaudin bought on moving to Hawaii. Gaudin is known as Catherine Lynch.

The only objective connection with Canada apparent from the district court's findings was that Gaudin has an ongoing Christian bilingual music production in Canada involving a producer and manufacturer of CDs and a retailer.

Besides the above facts, the court found with respect to Gaudin's subjective intent that "[w]here[Gaudin] intends to reside for the next five years depends upon a number of factors which are presently unknown," but Gaudin "intends to return with [the children] to Quebec" when the litigation in the Ninth Circuit and/or Hawaii courts returns the children to her. The court concluded that, no matter who had the burden of proof, "it has been proven that [Gaudin] is currently a permanent resident of Hawaii for purposes of the Hague Convention proceedings." It explained that Gaudin moved to Hawaii, sold her home in Canada and bought a new home in Hawaii, married a long-time Hawaii resident, and intends to remain in Hawaii at least until the litigation returns the children to her. The court also acknowledged that if Gau-

din does not get the children, "then her intentions are unknowable at present." In the end, the court concluded that, "considering both subjective and objective evidence, [Gaudin] has moved permanently to Hawaii." Accordingly, the court dismissed the petition as moot and Gaudin now appeals.

### III.

Gaudin contends that, based on the evidence before the district court, the court erred in concluding that she had moved permanently to Hawaii. Gaudin cites her testimony at the evidentiary hearing that her intent is to stay in Hawaii "until the litigation for the return of my boys is completed, and then I intend to return back to Quebec with the boys and my husband," and the district court's finding that she intends to return to Quebec. She also argues that *Gaudin I* was wrongly decided.

■■■ We first decline to revisit our decision in *Gaudin I* that, if a Hague Convention petitioner moves permanently to the same country as the abductor, the petition is moot because no effective relief remains for us to grant. *Gaudin I*, which we follow as the law of the case, *see Jeffries v. Wood*, 114 F.3d 1484, 1488–89 (9th Cir.), *overruled on other grounds by Lindh v. Murphy*, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), forecloses our adopting a contrary position. None of the reasons for deviating from the law of the case—"(1) the decision is clearly erroneous and its enforcement would work a manifest injustice, (2) intervening controlling authority makes reconsideration appropriate, or (3) substantially different evidence was adduced at a subsequent trial," *Jeffries*, 114 F.3d at 1489 (footnote and internal quotation marks omitted)—applies here.

We therefore proceed to Gaudin's contention that the district court erred in concluding that she had moved permanently to the United States. To address this argument, we must clarify the principles of law that govern whether a petitioner has made a permanent move to the same country as the abductor. *Gaudin I* framed the issue for the district court on remand as simply "whether Gaudin has moved permanently to Hawaii," 282 F.3d at 1184, or "relocated" permanently. *Id.; see also id.* at 1183. Neither the Hague Convention, nor its implementing legislation—which use the term "habitual residence"—provide guidance to the meaning of these terms. *See Mozes v. Mozes*, 239 F.3d 1067, 1075–76 n. 21 (9th Cir.2001) (distinguishing "habitual residence" from "domicile, which requires 'a combination of residence and intention of permanent or indefinite residence.' ") (quoting *Re B (minors)(abduction)*, [1993] 1 F.L.R. 993, 998 (Eng.Fam.Div.)). Ultimately, the district court chose, in accordance with the parties' agreement, to apply the factors that federal courts use in determining domicile for purposes of diversity jurisdiction.

■■■ " 'Domicile' is, of course, a concept widely used in both federal and state courts for jurisdiction and conflict-of-law purposes, and its meaning is generally uncontroverted." *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48, 109 S.Ct. 1597, 104 L.Ed.2d 29 (1989). "A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return." *Kanter v. Warner–Lambert Co.*, 265 F.3d 853, 857 (9th Cir.2001) (citing *Lew v. Moss*, 797 F.2d 747, 749 (9th Cir.1986)). "A person residing in a given state is not necessarily domiciled there...." *Id.* A person generally assumes the domicile of his or her parents, and she may have only one domicile at a time. *See Lew*, 797 F.2d at 750–51. Domicile may be changed by being physically present in the new jurisdic-

tion with the intent to remain there. *See Mississippi Band*, 490 U.S. at 48, 109 S.Ct. 1597; *Kanter*, 265 F.3d at 857. Thus, domicile includes a subjective as well as an objective component, although the subjective component may be established by objective factors.

■■■ Guided by our holding in *Gaudin I*, we agree with the district court's choice of domicile as the appropriate measure of whether one has moved permanently to a new jurisdiction. In *Gaudin I*, we carefully and repeatedly characterized the mootness question as whether Gaudin had moved "permanently" to Hawaii. As we explained: "[W]hen a petitioner relocates permanently to the same country in which the abductor and the children are found, she casts her lot with the judicial system of that country. When Gaudin purportedly relocated, she severed her ties with Canada and made Hawaii the proper forum to determine custody matters." *Gaudin I*, 282 F.3d at 1183. We recognized that Gaudin's intent to remain in Hawaii, and not just her residence there, was critical because we also observed that if, on remand, it was shown that Gaudin had moved to Hawaii "for the sole purpose of regaining custody of the children to return to Canada," her petition would not be moot. *Id.* The traditional concept of domicile, as contrasted with mere residence, captures well the notion of permanence. *See Kanter*, 265 F.3d at 857; *Weible v. United States*, 244 F.2d 158, 163 (9th Cir. 1957). We conclude that *Gaudin I* requires us to adopt domicile as the test for whether Ms. Gaudin's petition has been mooted by her having permanently relocated to the same country as the abductor. In addition, we note that the principles of domicile are familiar, well-settled, and easy

to apply. *Mississippi Band*, 490 U.S. at 48, 109 S.Ct. 1597.

## IV.

■■■ Notwithstanding the objective evidence of Gaudin's move to Hawaii and the uncertainty concerning her subjective intent to relocate permanently there, we disagree with the district court's conclusion. We base our judgment on the fact that, at present, Gaudin is precluded by law from relocating permanently to the United States. Gaudin is a Canadian citizen who has invoked the Immigration and Nationality Act ("INA") § 101(a)(15)(B), 8 U.S.C. § 1101(a)(15)(B), as the basis for her current presence in the United States.[1] That provision describes, in relevant part, the following class of "nonimmigrant aliens": "an alien ... having a residence in a foreign country *which he has no intention of abandoning* and who is visiting the United States *temporarily for business or temporarily for pleasure.*" *Id.* (emphasis added).

The Supreme Court has cited this provision as an example of a statute in which "Congress has precluded the covered alien from establishing domicile in the United States." *Toll v. Moreno*, 458 U.S. 1, 14 & n. 20, 102 S.Ct. 2977, 73 L.Ed.2d 563 (1982). Indeed, the Court has referred to Section 1101(a)(15)(B) as a statute in which Congress "expressly conditioned admission ... on an intent not to abandon a foreign residence or, by implication, on an intent not to seek domicile in the United States." *Elkins v. Moreno*, 435 U.S. 647, 665, 98 S.Ct. 1338, 55 L.Ed.2d 614 (1978). In *Carlson v. Reed*, 249 F.3d 876 (9th Cir. 2001), we held that even if an alien temporarily in the United States "could establish

---

1. We note that the details of Gaudin's immigration status were not presented to the district court. Rather, the issue was raised by

this court prior to oral argument in an order requesting supplemental briefing.

a subjective intent to remain permanently in [a state]," she would "lack[ ] the legal capacity to establish domicile in the United States." *Id.* at 881; *see also Graham v. INS,* 998 F.2d 194, 196 (3d Cir.1993) ("If petitioner complied with the terms of his temporary worker visa, then he could not have had the intent necessary to establish a domicile in this country. On the other hand, if he did plan to make the United States his domicile, then he violated the conditions of his visa and his intent was not lawful. Under either scenario, petitioner could not establish 'lawful domicile' in the United States while in this country on a nonimmigrant, temporary worker visa.").

In sum, we conclude that Gaudin is barred by law from possessing the requisite intent to establish domicile in Hawaii. Because she cannot lawfully have moved permanently to Hawaii, the case is not moot, and the court erred in so holding.

In the interests of the children, it is important that this litigation conclude as quickly as possible. The children were born in 1990 and 1992. The Hague Convention will cease to apply when they reach the age of sixteen. Convention, art. 4, 19 I.L.M. at 1501. At that time, this matter truly will be moot. The *Gaudin I* panel directed that if the district court held the case not moot, any appeal on the merits should be returned to the same panel. 282 F.3d at 1184. In light of our conclusion that the district court erred in holding the case moot, the clerk of the court is directed to refer the case back to the *Gaudin I* panel.

SO ORDERED.

REVERSED.