**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CATHERINE JANE VON KENNEL
GAUDIN,

　　　　*Petitioner-Appellant,*

　　　　v.

JOHN R. REMIS, JR.,

　　　　*Respondent-Appellee.*

No. 03-15687

D.C. No.
CV-00-00765-SPK/
LEK

OPINION

Appeal from the United States District Court
for the District of Hawaii
Samuel P. King, Senior Judge, Presiding

Submitted July 18, 2005*
San Francisco, California

Filed July 18, 2005

Before: David R. Thompson, Diarmuid F. O'Scannlain, and
Marsha S. Berzon, Circuit Judges.

Opinion by Judge O'Scannlain

---

*This appeal was previously argued before another panel of this court, which issued an opinion, *see* 379 F.3d 631 (9th Cir. 2004), and transferred the case to this panel for further proceedings. This panel unanimously finds the remaining issues in this case suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2). The case is ordered resubmitted as of the date of this opinion.

## COUNSEL

Paul A. Lynch, Lynch Ichida Thompson Kim & Hirota, Honolulu, Hawaii, for the petitioner.

Chunmay Chang, Honolulu, Hawaii, for the respondent.

## OPINION

O'SCANNLAIN, Circuit Judge:

We are invited to decide whether two minor children, abducted by their father in Canada and brought to the United States, should be returned to Canada under the International Child Abduction Remedies Act and the Hague Convention on the Civil Aspects of International and Child Abduction.

I

The facts in this case are set out in prior opinions of this court, *see Gaudin v. Remis*, 282 F.3d 1178 (9th Cir. 2002)

("*Gaudin I*"); *Gaudin v. Remis*, 379 F.3d 631 (9th Cir. 2004) ("*Gaudin II*"), and so we recapitulate the case's lengthy history only as is necessary for our decision today. Catherine Gaudin and John Remis have two children, who in 2000 were living with Gaudin in Canada. Remis, concerned about the way Gaudin was raising the children, took them to Hawaii, refused to return them, and filed for custody in Hawaii Family Court. In July 2000, the Family Court awarded temporary custody of the children to Remis.

Gaudin then filed a petition in federal court under the International Child Abduction Remedies Act ("ICARA"), 42 U.S.C. § 11603(b), and the Hague Convention on the Civil Aspects of International and Child Abduction (the "Hague Convention" or the "Convention"), October 25, 1980, T.I.A.S. No. 11670, 19 I.L.M. 1501, seeking return of the children to Canada. Remis did not dispute that he had removed the children from Canada, but he argued that the children should not be returned because of the Convention's exception for cases in which the children would face a grave risk of psychological harm if returned to the non-abducting parent. *See* Hague Convention art. 13 ¶1(b), 19 I.L.M. at 1502.

Remis submitted several pieces of evidence in support of his argument to the district court. Chief among them were the declaration of a clinical psychologist who examined the children, a letter from the same psychologist written after further examination, and a report from a guardian ad litem appointed by the Hawaii Family Court.

The psychologist's initial report stated that she had "significant concerns" about the children's mental health and opined that returning the children to their mother "would result in significant damage to their mental health." She reported the children's statements that they "are under severe stress when living with their mother and that the stress is increasing because their mother's religious obsessions are increasing." The children also objected to many of their mother's rules:

they were not allowed to watch television, play sports, or use the Internet; could not participate in after-school activities because they interfered with Bible study; were not allowed to sleep in the same bedroom "because they might laugh"; were not allowed to celebrate holidays; were not allowed to attend sleepovers or birthday parties at their friends' homes; had to spend six hours traveling to and attending a church service with their mother each week; and had to wear to school "extremely large or strange-looking" clothing made by their mother.

The psychologist's follow-up letter, written several months after the initial declaration, reported that the boys continued to express anger at their mother. When one of the boys talks about his mother, the psychologist reported, "[r]age flashes from his eyes." The same boy "said that he would not be able to stand it emotionally if he were returned to his mother." The other boy's anger was less but still "considerable."

The report of the guardian ad litem, written around the same time as the psychologist's letter, described the guardian's conversations with the boys, during which they made similar complaints to those contained in the psychologist's declaration. The report described the impressions of Remis's secretary, who had spent time with the boys while they were visiting Remis's office: she described how "when the boys joked, they joked about how they would torture girls or electrocute them." They told the secretary that if she ever gave birth to a girl, they would tie her up and electrocute her. They also told the secretary that they hated their mother and did not want to return to her. The guardian ad litem also reviewed written reports from the boys' teachers, who confirmed that the boys had been socially isolated and had worn strange clothing to school, including "baggy pants" and "clown pajamas."

The report also described the impressions of Gaudin's pastor in Quebec, who reported that the sons are very close to

their mother and engage in activities together such as hiking and fishing. He admitted that Gaudin's style of dress was eccentric but stated that "everyone thinks highly of her" and that he would trust her to watch his own children.

The report stated that the children "report that life with their father is fun" and indicated their desire to stay with him. The guardian ad litem recommended that Remis receive sole physical and legal custody of the children, but noted that her "recommendation is limited by the fact that [she] has had no input from Ms. Gaudin because Ms. Gaudin has chosen not to communicate with" the guardian.

Gaudin, in turn, primarily relied upon her own affidavit that stated that she was a good parent and letters from a neighbor and her pastor stating that she cared for the children. She also alleged that Remis has a drug problem, that he inappropriately sleeps with the children while in the nude, and that he had recently made a sexual advance toward one of her children by another relationship.

On December 11, 2000, the district court denied the petition. The court agreed with Gaudin that Remis had wrongfully taken the children from Canada, but credited the reports of the guardian ad litem and the psychologist and so concluded that the children would suffer a "grave risk of psychological harm" if returned to Gaudin.

Gaudin appealed to this court. While that appeal (the "*Gaudin I* appeal") was pending, the Hawaii Family Court awarded permanent custody of the children to Remis. It also concluded that the children would face a "grave risk of psychological harm" if they were returned to their mother. (The Hawaii Supreme Court recently affirmed the state-court custody judgment, though it did not directly address the grave-risk issue.)

On October 12, 2001, after briefing was concluded in the *Gaudin I* appeal, Remis moved to dismiss for mootness. He

alleged that Gaudin had moved permanently to Hawaii, purchased a new home there, secured a Hawaiian real estate broker's license, and married her attorney in this case, who is licensed to practice in Hawaii. Remis argued that neither ICARA nor the Hague Convention could afford her any relief because both parents and the children were permanently located in Hawaii.

In our decision of March 2002, we held that ICARA and the Convention cannot be invoked when the petitioner moves permanently to the same country in which the abductor and the children are located. *See Gaudin I*, 282 F.3d at 1183. The parties disputed whether Gaudin had actually moved permanently to Hawaii, however, and so we remanded to the district court for it to make that determination. The district court found that she had indeed moved permanently, but Gaudin appealed and another panel of this court reversed, holding that "domicile [is] the appropriate measure of whether one has moved permanently to a new jurisdiction" and that Gaudin's temporary immigration status prevented her from establishing domicile in the United States. *Gaudin II*, 379 F.3d at 637-38.

The case is therefore not moot. The *Gaudin II* panel has transferred the case back to this panel for further proceedings pursuant to our instruction in *Gaudin I*, *see* 282 F.3d at 1184. Essentially, then, we are back where we were four years ago, before the mootness issue arose: we must consider the merits of the district court's decision of December 2000.

II

A

On January 28, 2005, after the case was transferred to this panel, Remis again moved to dismiss the appeal and response and reply briefs were filed. First, then, we must consider that motion. Remis argues that the appeal should be dismissed on grounds of *res judicata*. The Hawaii Family Court held, in its

custody orders of September 20, 2001, that the children should not be returned to Gaudin pursuant to ICARA because "the return of the parties' minor children . . . would expose them to a 'grave risk of psychological harm' . . . ." The Hawaii Supreme Court affirmed the orders on November 16, 2004, holding that ICARA permitted the Family Court to assume jurisdiction over the custody action. Remis argues that the Family Court's decision, affirmed by the Hawaii Supreme Court, now binds this court.

[1] We have held, however, that ordinary principles of claim and issue preclusion do not apply to claims under ICARA and the Convention. *See Holder v. Holder*, 305 F.3d 854, 863-64 (9th Cir. 2002). We noted in *Holder* that 42 U.S.C. § 11603(g)

> provides that federal courts adjudicating Hague Convention petitions must accord full faith and credit only to the judgments of those state or federal courts that *actually adjudicated a Hague Convention claim* in accordance with the dictates of the Convention and ICARA.

*Id.* at 864 (emphasis added). Gaudin did not bring her ICARA claim before the Hawaii courts; instead, she chose to exercise her right to seek relief under ICARA in federal court while simultaneously pursuing other remedies in state court. *See id.* We are therefore not bound by the judgment of the state court.[1]

[2] Remis also asks that we abstain under *Younger v. Harris*, 401 U.S. 37 (1971), and *Colorado River Water Conserva-*

---

[1]Moreover, Remis's argument would fail even outside the ICARA context, because of our holding in *Flood v. Harrington*, 532 F.2d 1248 (9th Cir. 1976), that judgments issuing after the judgment from which an appeal is taken do not constitute *res judicata* for the purpose of that appeal. *See id.* at 1250. In this case, the district court's judgment was entered on December 11, 2000, and the Hawaii Family Court's final orders were not entered until September 20, 2001.

*tion District v. United States*, 424 U.S. 800 (1976), but abstention under those doctrines is equally inappropriate in the case of an ICARA petition. *See Silverman v. Silverman*, 267 F.3d 788, 792 (8th Cir. 2001).

Accordingly, Remis's motion to dismiss the appeal is denied.

## B

**[3]** We turn now to the merits of the district court's refusal to order the children's return. (Under the Convention and ICARA, a court must generally order the return of a wrongfully abducted child to the parent from whom he was taken. Return is not required, however, if the abductor can establish one of the Convention's narrow affirmative defenses, 42 U.S.C. § 11603(e)(2), one of which applies if the abductor can show by clear and convincing evidence that the child would suffer a "grave risk" of "physical or psychological harm" if returned. 42 U.S.C. § 11603(e)(2)(A). "[T]he exception for grave harm to the child is not license for a court in the abducted-to country to speculate on where the child would be happiest." *Friedrich v. Friedrich*, 78 F.3d 1060, 1068 (6th Cir. 1996). Rather, the question is whether the child would suffer "serious abuse," *Blondin v. Dubois (Blondin II)*, 238 F.3d 153, 163 n.11 (2d Cir. 2001), that is "a great deal more than minimal." *Walsh v. Walsh*, 221 F.3d 204, 218 (1st Cir. 2000).

## C

**[4]** Gaudin disputes the district court's December 2000 finding that the children would face a grave risk of psychological harm if returned to their mother. We need not reach that issue, though, because we agree with Gaudin's alternative contention that, even if such a risk existed, the district court erred in failing to consider alternative remedies by means of which the children could be transferred back to Canada with-

out risking psychological harm. Courts applying ICARA have consistently held that, before denying the return of a child because of a grave risk of harm, a court must consider alternative remedies that would "allow both the return of the children to their home country and their protection from harm." *Blondin v. Dubois (Blondin I)*, 189 F.3d 240, 249 (2d Cir. 1999); *see also Walsh*, 221 F.3d at 219 (citing cases).

The district court recognized this principle, but only in part. The court stated as follows:

> The Court understands that a finding of grave risk does not mandate keeping the children in Hawaii. The decision is discretionary with this Court. The Court has considered other alternatives or undertakings such as requiring the children to return to Canada in the custody of their father or in the custody of a pastor acquainted with the Petitioner. Importantly, however, proceedings have been ongoing in the Family Court since July of 2000 . . . . That court-supervised process has already consisted of evaluations and reports by psychologists, doctors, social workers, lawyers, police officers, and jurists. . . . Exercising its discretion, and considering the totality of the circumstances, this Court finds that the Hawaii Family Court is the best forum for deciding whether the prior . . . Family Court custody judgments should be modified permanently or otherwise.

District Court Order (Dec. 11, 2000) at 14.

**[5]** While it is clear that the district court recognized the need to consider alternative remedies, it is equally clear that the court mistakenly assumed that it had wide-ranging discretion to consider what remedy, if any, would be suitable under the "totality of the circumstances." In exercising that discretion, it clearly viewed the existence of ongoing custody pro-

ceedings in Hawaii as a strong reason not to return the children to Canada.

**[6]** That approach, however, contravenes the basic purpose and function of the Hague Convention and ICARA, which are based on the principle that the *home* country should make the custody determination whenever possible. *See Mozes v. Mozes*, 239 F.3d 1067, 1070 (9th Cir. 2001) (citing Elisa Perez-Vera, Explanatory Report ¶¶ 13, 16, in 3 Hague Conference on Private International Law, Acts and Documents of the Fourteenth Session, Child Abduction 426 (1982)). The proper question is not what forum is "best" under the "totality of the circumstances." Rather, the question is simply whether any reasonable remedy can be forged that will permit the children to be returned to their home jurisdiction for a custody determination while avoiding the "grave risk of psychological harm" that would result from living with their mother. *See Blondin*, 189 F.3d at 249 (instructing the district court to consider "other arrangements . . . that would allow the children to return to France in some other person's care, pending a long-term custody adjudication" as well as any other remedy that would permit return to the home country without grave risk of harm).

**[7]** In deciding this question, the district court should not have been influenced by the existence or outcome of custody proceedings in Hawaii Family Court, because the primary purpose of the Hague Convention and ICARA is to *prevent* parents from wrongfully taking children across national borders in order to shop for a friendly forum in which to litigate custody. *See Mozes*, 239 F.3d at 1070. That, by all appearances, is exactly what happened here. Whether the children are better off with their father (Remis) than with their mother (Gaudin) is a matter for *custody* determination, and the Hague Convention and ICARA dictate that custody must be determined by the home jurisdiction—in this case, Canada—unless the existence of a "grave risk" truly renders that impossible.

**[8]** We are bound, therefore, to remand for the district court to determine whether any such remedy is possible. That inquiry, however, is inseparably bound up with the question whether a grave risk of psychological harm exists in the first place. *See Danaipour v. McLarey*, 286 F.3d 1, 21 (1st Cir. 2002) ("Necessarily, the 'grave risk' exception considers, inter alia, where and how a child is to be returned. The undertakings approach allows courts to conduct an evaluation of the placement options . . . in the country of habitual residence . . . ." (quoting *Walsh*, 221 F.3d at 219)); *A v. Central Auth. for New Zealand*, [1996] 2 N.Z.F.L.R. 517 (N.Z. 1996) (noting that it is "reasonably clear" that there is no power to "attach conditions" to a return order "in the absence of finding in favour of a defence under [article] 13"); *Sonderup v. Tondelli*, 2001 (1) SA 1171 (CC), at ¶47 (concluding that no grave risk finding could be made, based on both psychological evidence and the potential to order mitigating measures in the country of habitual residence), *available at* http://www.hiltonhouse.com/cases/Sonderup_SA.txt.

The district court, obviously, must consider the effect of any possible remedies in light of circumstances as they exist in the present, not as they were five years ago. It is therefore unnecessary for us to evaluate the merits of the district court's finding that a grave risk of psychological harm existed in 2000. The questions before the district court on remand will be whether a grave risk of harm *now* exists, and if so, whether that risk can be minimized through an alternative remedy.

Although we do not decide whether the district court's prior grave-risk finding was erroneous, we do offer this guidance for the district court to consider on remand. The grave-risk exception to the return remedy was, like the other exceptions, "drawn very narrowly lest [its] application undermine the express purposes of the Convention—to effect the prompt return of abducted children." Department of State: Hague International Child Abduction Convention; Text and Legal Analysis, 51 Fed. Reg. 10,494, 10,509 (Mar. 26, 1986) [here-

inafter "State Department Report"]. The risk must be "grave, not merely serious," *id.* at 10,510, and must be proven by clear and convincing evidence, 42 U.S.C. § 11603(e)(2)(A). Moreover, because the Hague Convention provides only a provisional, short-term remedy in order to permit long-term custody proceedings to take place in the home jurisdiction, the grave-risk inquiry should be concerned only with the degree of harm that could occur in the immediate future. Because psychological harm is often cumulative, especially in the absence of physical abuse or extreme maltreatment, even a living situation capable of causing grave psychological harm over the full course of a child's development is not *necessarily* likely to do so during the period necessary to obtain a custody determination.

On remand, then, the district court must decide—without deferring to the findings of the Hawaii state courts—whether this narrow exception is met under present circumstances. If it is, the court must proceed to consider whether that risk can be minimized or eliminated through some alternative remedy. The district court itself mentioned the possibility of requiring the children to return to Canada in their father's custody or in the custody of a third party. Perhaps the court would deem one of those undertakings appropriate, or another, or perhaps it would conclude that it would be impossible to return the children to Canada without placing them at risk. We do not in any way prejudge the district court's decision. Again, however, it shall not give weight to the fact that custody proceedings have already taken place in Hawaii.[2]

---

[2]We also emphasize that any remedy must involve the return of the children to the jurisdiction of Canadian courts. While the district court has the authority to vacate state custody orders if necessary, *see Mozes*, 239 F.3d at 1085 n.55, it may do so only to ensure that the Convention's purposes are not frustrated. Thus, should the district court order the children returned to Gaudin, it should also ensure that she follows through forthwith on her stated intention to return to Canada.

The district court should also bear in mind that it may properly refuse to order the return of the children even *absent* a grave-risk finding if it "finds that the child[ren] object[ ] to being returned and ha[ve] attained an age and degree of maturity at which it is appropriate to take account of [their] views." Hague Convention, art. 13 ¶2, 19 I.L.M. 1501, 1502 (1980). Thus, on remand (assuming Remis still wishes to pursue this defense, which he raised below but did not emphasize) the district court should determine—after any appropriate factfinding—whether the children object to being returned and whether they are sufficiently mature for those views to carry weight.[3]

Finally, as we have noted, the older of the two children will turn sixteen next year, at which time his custody will no longer be subject to the Hague Convention's provisions. *See Gaudin II*, 379 F.3d at 638. Accordingly, the district court shall, so far as possible, expedite consideration of the case. Any subsequent appeal shall be assigned to this panel, and either party may move for an expedited briefing schedule on appeal.

III

[9] For the foregoing reasons, the motion to dismiss is **DENIED**, the judgment is **VACATED**, and the case is **REMANDED** for further proceedings consistent with this opinion. The parties shall bear their own costs on this appeal.

---

[3]The district court should exercise caution in making this determination, so as to ensure that statements made by the children reflect their own, considered views and not merely the result of having lived for so long with the absconding parent. *See* State Department Report at 10,510.