**CONDITIONALLY GRANT; and Opinion Filed July 9, 2019.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

No. 05-19-00015-CV

## IN RE PETER SWART, Relator

**Original Proceeding from the 256th Judicial District Court
Dallas County, Texas
Trial Court Cause No. DF-16-24538**

## OPINION

Before Justices Brown, Schenck, and Reichek
Opinion by Justice Schenck

In this mandamus proceeding, relator Peter Swart seeks relief from the trial court's denial of his special appearance in a divorce proceeding brought against him by real party in interest Nina Morales. Swart is a resident of Costa Rica and a citizen of the Netherlands. Morales is a citizen of Bolivia and a resident of Costa Rica. The parties participated in marital separation proceedings in Costa Rica prior to Morales's decision to travel to the United States. Morales is present in the United States pursuant to a B1/B2 visa. Swart contends that Morales does not meet the statutory requirements for filing a petition for divorce in this state and that her unilateral decision to travel here does not subject him or his assets to the court's territorial jurisdiction. For the reasons that follow, we conditionally grant the writ.

BACKGROUND

Swart and Morales married in Bolivia in April 1997. Two children were born during the marriage. They are now adults. Due to the nature of Swart's employment, the pair lived in several countries after they married and until 2004.[1] In 2004, Swart and Morales became residents of Costa Rica.

In November 2015, Swart moved out of the marital home in Costa Rica. A few days later, Morales, accusing Swart of "psychological domestic violence" against her, initiated proceedings preliminary to a separation and divorce in Costa Rica. The court, finding the claims meritless, dismissed the case without a contested hearing. Swart financially supported Morales through the spring of 2016, at which time Morales applied for alimony in Costa Rica. Initially the court granted Morales's request for temporary alimony, which Swart paid. However, after reviewing the arguments of the parties, the judge ruled against Morales, finding she had resources, including income, sufficient to meet her needs. Further, the court made a formal finding that Morales had committed adultery and that her accusation of domestic violence against Swart constituted "slander or serious misconduct." Pursuant to the court's ruling, Swart ceased paying alimony.

On May 1, 2016, Morales traveled to Dallas on a B1/B2 tourist visa, a temporary visa granted for purposes of business and pleasure. She claims to have resided in Dallas County since that time. Under the terms of her visa, Morales must return to either Costa Rica or Bolivia every six months. As a basis for receiving her B1/B2 visa and remaining present in the United States, Morales represented to the United States Department of State that (1) the purpose of her trip was to enter the United States temporarily for business or pleasure; (2) she planned to remain for a specific, limited period; and (3) she had a residence outside of the United States as well as other binding ties that would ensure her departure from the United States at the expiration of her visa.

---

[1] Although Swart and Morales resided in Houston for a brief period of time, when the parties moved to Costa Rica, they relinquished their legal right to United States residency. The parties never lived together in Dallas.

2

*See* 22 C.F.R. § 41.31. These representations are required to overcome the presumption that all visitors to the United States intend to immigrate and remain in the United States. *See* 8 U.S.C. § 1141(b).

On November 14, 2016, Morales filed her petition seeking to divorce Swart in Dallas, Texas. In the petition, Morales stated that she was a domiciliary of Texas for the six-month period prior to filing and a resident of Dallas County for the ninety-day period prior to filing. She also asked that the court divide the marital estate, award her the bulk of the furniture, furnishings, and other miscellaneous household items currently in possession of both parties, the motor vehicles currently in her possession, and any and all community and separate property of the parties.[2] Specifically she requested the court award her a "division disproportionate share of the parties' estate."

On August 24, 2017, Swart filed his own suit for a final divorce in the Costa Rican family courts. The Costa Rican suit remains pending. Morales has been served in the Costa Rican case, but she has not filed a response to Swart's petition.

On September 20, 2017 at his residence in Costa Rica, Morales personally served Swart with a copy of her Texas divorce petition. Upon entering Swart's home, she clawed his arm and forehead, drawing blood. As a result, security services for the building in which Swart resides removed Morales from the premises. The next day, Swart filed a restraining order in the Costa Rican courts, which the court granted.

On October 13, 2017, Swart specially appeared in the Texas divorce proceeding. He also filed motions to abate, for protection, and to dismiss for *forum non conveniens*. Swart attacked the court's power to proceed on two sides of the same coin: its right to entertain her filing and his

---

[2] In her Original Petition for Divorce, Morales specifically requests a division of community property. As such, the body of law surrounding in rem jurisdiction, which permits a court to dissolve a marriage even when the court does not have personal jurisdiction over the other spouse, does not apply. *See Estin v. Estin*, 334 U.S. 541, 547-548 (1948).

obligation to respond. In his special appearance, Swart contended that "neither party to this suit meets the residency and domicile requirements of the Texas Family Code to confer jurisdiction." Further, he argued that there is no basis for Texas exercising personal jurisdiction over him in this case, as he has no general or relevant specific connection of his own to the State. In response to Swart's special appearance, Morales attempted to support her assertions with her affidavit testimony that she has lived in Dallas County (Garland) since before May 2016 with her brother and "intends to reside in Texas permanently." Morales also presented evidence that she has become involved in the local community by volunteering at her church, helping with her brother's family and caring for his children, and paying bills in her name from a Chase bank account on which her address is listed as Garland, Texas.

The trial court denied the special appearance in a March 6, 2019 order. Swart now requests this court issue a writ of mandamus directing the trial court to vacate its order and dismiss Morales's claims.[3]

## AVAILABILITY OF MANDAMUS REVIEW

Mandamus is an extraordinary remedy that is available only in limited circumstances. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992). Mandamus relief is available when the trial court abuses its discretion and there is no adequate remedy by appeal. *In re Deere & Co.,* 299 S.W.3d 819, 820 (Tex. 2009) (orig. proceeding) (per curiam). Mandamus review of significant rulings in exceptional cases may be essential to preserve important substantive and procedural rights from impairment or loss, allow the appellate courts to give needed and helpful direction to the law that would otherwise prove elusive in appeals from final judgments, and spare private

---

[3] The initial mandamus record filed with this Court did not include a signed order. Rather, there was an unsigned memorandum. In his petition for writ of mandamus, Swart requested this Court either issue a writ of mandamus directing the trial court to vacate the unsigned memorandum and dismiss Morales's claims, or, in the alternative, determine the unsigned memorandum is not an enforceable order subject to mandamus relief and issue a writ of mandamus directing the trial court to enter a signed order. On April 17, 2019 Swart filed a third supplemental mandamus record that included a signed order dated March 6, 2019. Therefore, we need not address this particular request.

parties and the public the time and money utterly wasted enduring eventual reversal of improperly conducted proceedings. *In re Prudential Ins. Co. of Am.,* 148 S.W.3d 124, 136 (Tex. 2004).

Although this Court has not previously addressed whether a denial of a special appearance is appropriate for mandamus review, other Texas courts have concluded that mandamus review is available to review a trial court's special appearance ruling in other family law contexts in light of the lack of interlocutory review of such orders. *See, e.g.*, *In re Lee-Cole*, No. 12-17-00179-CV, 2017 WL 3048488, at *2 (Tex. App.—Tyler July 19, 2017, orig. proceeding) (mem. op.) (review of denial of plea in abatement as to residency and domiciliary requirements in divorce proceeding); *see also In re Milton*, 420 S.W.3d 245, 253 (Tex. App.—Houston [1st Dist.] 2013, orig. proceeding) (mandamus proper to review denial of special appearance and motion to dismiss in divorce and SAPCR); *In re Green*, 385 S.W.3d 665, 671 (Tex. App.—San Antonio 2012, orig. proceeding) (mandamus relief appropriate to review order denying motion to dismiss divorce proceeding based on failure to establish family code residency requirement). We agree. Absent mandamus review, jurisdictional and other like issues, including a party's claimed due process right to avoid the obligation of answering or appearing at trial, would be rendered effectively meaningless. *See In re Prudential*, 148 S.W.3d at 136 (discussing adequacy of appeal from final judgment in connection with mandamus review of legal determinations).

## DISCUSSION

As noted, Swart's special appearance complained both of Morales' right to initiate suit and his obligation to answer it. When confronted with two obstacles of this nature, a court may act on either. *See Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 379 (Tex. 2006) (Brister, J., concurring) (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583-84 (1999)).

I.      **Right to Divorce in Texas**

"The right to apply for, or obtain a divorce is not a natural one, but is accorded only by reason of statute, and the state has the right to determine who are entitled to use its courts for that

5

purpose and upon what conditions they may do so." *Wood v. Wood,* 320 S.W. 2d 807, 810 (Tex. 1959). The Texas Family Code provides,

> a suit for divorce may not be maintained in this state unless at the time the suit is filed either the petitioner or the respondent has been:
>
> (1) a domiciliary of this state for the preceding six-month period; and
> (2) a resident of the county in which the suit is filed for the preceding 90-day period.

TEX. FAM. CODE ANN. § 6.301.

This requirement is analogous to jurisdiction in that it is mandatory and cannot be waived. *See In re Milton*, 420 S.W.3d at 247. Our sister courts have also construed the requirement as one that may even be raised by this Court sua sponte. *See Reynolds v. Reynolds*, 86 S.W.3d 272, 275 (Tex. App.—Austin 2002, no pet.). However, we need not do that here, as Swart raised this requirement in both his special appearance and his petition before us. In his special appearance, he stated, "Neither party to this suit meets the residency and domicile requirements of the Texas Family Code to confer jurisdiction." In the affidavit supporting his special appearance he said, "I strongly believe that Nora is 'forum shopping' and has only opted to file for divorce in Texas because it is more expedient for her than proceeding through the divorce process in Costa Rica. To this day, she is not domiciled in Texas." In his Petition for Writ of Mandamus, Swart similarly urges,

> The evidence in the record is undisputed that Ms. Morales never resided in Dallas, Texas with Mr. Swart. Indeed, the record shows that Ms. Morales was not even a domiciliary of Texas for six months nor a resident of Dallas County for ninety days prior to filing for divorce . . . Due to the conditions of her tourist visa, Ms. Morales is required to return to the country of her permanent residence—Costa Rica—or the country of which she is a citizen—Bolivia—every few months.

In her petition, and before us, Morales contends she meets the requirements for maintaining a suit for divorce. Accordingly, we examine the facts of Morales's presence in Texas as they apply to the domiciliary and residency requirements under the family code. *See* TEX. FAM. CODE ANN.

6

§ 6.301.  As we explain below, Morales's claim in this regard collides irrevocably with controlling federal law by which she claims to reside in Texas.

**A. Domiciliary**

The Texas Family Code does not attempt to define the term "domicile" or "domiciliary." Domiciliary is generally defined as "[a] person who resides in a particular place with the intention of making it a principal place of abode." *Nieto v. Nieto*, No. 04-11-00807-CV, 2013 WL 1850780, at \*5–6 (Tex. App.—San Antonio May 1, 2013, pet. denied) (mem. op.) (quoting BLACK'S LAW DICTIONARY 524 (8th ed. 2004)); *Palau v. Sanchez*, No. 03-08-00136-CV, 2010 WL 4595705, at \*6 (Tex. App.—Austin Nov. 10, 2010, pet. denied) (mem. op.) (quoting BLACK'S LAW DICTIONARY 559 (9th ed. 2009)).[4]  Thus, domicile includes a subjective as well as an objective component, although the subjective component may be established by objective factors. *See Gaudin v. Remis*, 379 F.3d 631, 637 (9th Cir. 2004).  Nothing in the statute implies the Texas Legislature intended it to mean something contrary to the generally understood definition. Therefore, Morales must prove: (1) she was physically present in Texas for the statutory period; and (2) she intends to make Texas her principal place of abode.

We begin our analysis with the intent requirement.  Under the facts of this case, the issue of intent is directly related to Morales's status as a visitor to the United States.  We therefore turn to the conditions surrounding her presence in this country.

**B. Morales' Claim of Domicile is Barred as A Matter of Law**

Notwithstanding Morales's allegation that she intends to reside in Texas permanently, we conclude she does not meet the subjective intent requirement.  We base our judgment on the fact that, at present, Morales is precluded by law from relocating permanently to the United States. *See id*. Morales is a Bolivian citizen and Costa Rican resident who has invoked the Immigration and

---

[4] "Domicile," however, is a concept widely used in both federal and state courts for jurisdictional and conflict-of-laws purposes, and its meaning is generally uncontroverted. *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989).

Nationality Act §1101(a)(15)(B), as the basis for her current presence in the United States. 8 U.S.C.A. § 1101(a)(15)(B); 22 C.F.R. §41.31. A regulation under this statute provides, in relevant part, that "[t]he alien intends to leave the United States at the end of the temporary stay," that "consular officers are authorized, if departure of the alien as required by law does not seem fully assured, to require the posting of a bond with the Secretary of Homeland Security in a sufficient sum to ensure" departure; and demand the visitor to show that "[a]dequate financial arrangements have been made to enable the alien to carry out the purpose of the visit to and departure from the United States." *See* 22 C.F.R. § 41.31(a).

The United States Supreme Court has cited Section 1101 as an example of a statute by which "Congress has precluded the covered alien from establishing domicile in the United States." *Toll v. Moreno*, 458 U.S. 1, 14 (1982). Indeed, the Court has referred to § 1101(a)(15)(B) as a statute in which Congress "expressly conditioned admission . . . on an intent not to abandon a foreign residence or, by implication, on an intent not to seek domicile in the United States." *Elkins v. Moreno*, 435 U.S. 647, 665 (1978). For its part, the Ninth Circuit has found that, under *Elkins*, "even if an alien temporarily in the United States 'could establish a subjective intent to remain permanently in [a state],'" she would "lack[] the legal capacity to establish domicile in the United States." *See Gaudin*, 379 F.3d at 638; *see also Graham v. Immigration and Naturalization Serv.*, 998 F.2d 194, 196 (3d Cir. 1993) ("If petitioner complied with the terms of his temporary worker visa, then he could not have had the intent necessary to establish a domicile in this country. On the other hand, if he did plan to make the United States his domicile, then he violated the conditions of his visa and his intent was not lawful. Under either scenario, petitioner could not establish 'lawful domicile' in the United States while in this country on a nonimmigrant, temporary worker visa.").

There is no indication that the Texas Family Code intends a definition of "domiciliary" or "resident" that would conflict with the federal law governing Morales' presence in Texas. We

8

note, however, as Chief Judge Garcia recently wrote, that any such conflict would be controlled by federal law. *City of El Cenizo v. State*, 264 F. Supp. 3d 744, 796 (W.D. Tex. 2017) (Garcia, C. J.) (subsequent history omitted). "The Government of the United States has broad, undoubted power over the subject of immigration and the status of aliens[,]" derived in part from the constitutional directive that the federal government "establish an uniform Rule of Naturalization." (quoting *Arizona v. United States*, 567 U.S. 387, 394 (2012) quoting U.S. CONST. ART. I, § 8, cl. 4); *Kleindienst v. Mandel*, 408 U.S. 753, 765–66 & n.6 (1972)).

In applying for and receiving a B1/B2 visa, Morales conveyed to the United States Department of State that (1) the purpose of her trip was to enter the United States temporarily for business or pleasure; (2) she planned to remain for a specific, limited period of time; and (3) she had a residence outside of the United States as well as other binding ties that would ensure her departure from the United States at the expiration of her visa. *See* 22 C.F.R. § 41.31. Indeed, it is precisely Morales' representation that Texas is *not* the place she intends to make her permanent home that explains her presence. Because Morales is not legally eligible to file for divorce in Texas, the trial court abused its discretion in finding it had jurisdiction over this case.[5] *See Stallworth v. Stallworth*, 201 S.W.3d 338, 345 (Tex. App.—Dallas 2006, no pet.). As a result, we need not address the fact-bound aspects of her claim to personal jurisdiction over Swart.

Typically, when the residency requirements under section 6.301 have not been met, the trial court abates the suit so that the residency requirements can be met by passage of time. *Cf. Am. Motorists Ins. v. Fodge,* 63 S.W.3d 801, 805 (Tex. 2001). However, where, as here, the record does not support a contention that Morales intends to move to Texas, the impediment to the trial

---

[5] We recognize that other Texas courts of appeals have addressed the issue of domicile under section 6.301. The opinions of these courts are not binding on us; however, they are often helpful. The San Antonio Court of Appeals in *Nieto v. Nieto* found the petitioner satisfied residency and domicile requirements even though she was in the United States on a "temporary" visa. However, *Nieto* involved an "E2" visa, which does not preclude an individual's eligibility to domicile in the United States. *See Nieto*, No. 2013 WL 1850780, at *5–6; *Elkins*, 435 U.S. at 648. In *Palau v. Sanchez*, the party claiming domicile was also a B1/B2 visa holder. *Palau*, 2010 WL 4595705, at *6. The Austin Court of Appeals found the domiciliary requirements and the requirements of section 6.301 more generally do "not [require] that she be a citizen of the United States or carry a certain type of visa." *Id*. The court did not discuss the limitations imposed on residence or domicile in connection with that status.

court's going forward cannot be removed by mere passage of time, and the suit should be dismissed. *Id.* (holding that if the impediment to jurisdiction cannot be removed, then the suit must be dismissed).

## CONCLUSION

We conclude the trial court abused its discretion in concluding it had jurisdiction over this case. We further conclude that Swart has no adequate remedy on appeal. Accordingly, we conditionally grant Swart's petition for writ of mandamus and direct the trial court to issue, within thirty days of the date of this opinion, written rulings vacating its March 9, 2019 order and dismissing Morales's petition. A writ will issue if the trial court fails to comply.

/David J. Schenck/
DAVID J. SCHENCK
JUSTICE

190015F.P05

10